PEOPLE v LAUBE

Docket No. 88905. Submitted April 16, 1986, at Lansing. Decided
September 8, 1986. Leave to appeal denied, 428 Mich 856.

Brian C. Laube entered a plea of guilty to a charge of larceny in
a building, on condition that by entering the plea he would not
waive his right to assert as error on appeal the denial of his
motion to suppress evidence which was based on an alleged
illegal search and seizure. In exchange for his plea, a second
charge of larceny in a building and a charge of possession of
marijuana were dismissed. The Iosco Circuit Court, J. Richard
Ernst, J., sentenced defendant to from sixteen months to four
years in prison. Defendant appealed, raising the sole issue of
the legality of the search and seizure.

The Court of Appeals *held:*

1. The circuit court's findings with respect to the deputies'
actual reason for initially stopping defendant, who was walking
near a roadway in a business district at 3:45 A.M., are not clear.
However, the record supports a conclusion that defendant was
stopped after the deputies witnessed defendant commit a civil
infraction by not walking against the flow of vehicular traffic.
A police officer need not have an articulable suspicion that
criminal activity is afoot to stop an individual who he observes
commit a traffic violation.

2. The record also indicated that the continued detention of
defendant, after he was initially stopped by the deputies, was
with his consent and at his behest in an attempt to secure a
ride from the deputies.

3. Defendant's behavior, which was observed by the deputies
after they had stopped him for questioning and after defendant
had asked for a ride, created a legitimate concern on behalf of
the deputies regarding their safety. The public interest over the

REFERENCES

Am Jur 2d, Arrest §§ 52 *et seq.*
Am Jur 2d, Evidence §§ 408 *et seq.*
Am Jur 2d, Search and Seizure §§ 8 *et seq.*
See the annotations in the Index to Annotations under Arrest;
Search and Seizure.

safety of police officers is recognized under the law, but must be balanced, in this case, against defendant's right to be free from unreasonable searches and seizures. The limited intrusion created by a pat-down search for weapons, which yielded a packet of marijuana, was not an unreasonable search under the circumstances in this case.

Affirmed.

1. SEARCHES AND SEIZURES — REASONABLE SUSPICION.

The criteria for a constitutionally valid limited intrusion upon a citizen's liberty by a police officer, short of probable cause for arrest, are that the police must have a particularized suspicion based on an objective observation, that the person stopped has been, is, or is about to be engaged in criminal wrongdoing; the articulable reasons or founded suspicion or particularized suspicion that criminal activity is afoot must derive from the police officer's assessment of the whole picture—the totality of circumstances with which he is confronted.

2. ARREST — TRAFFIC VIOLATIONS.

A police officer need not have an articulable suspicion that an individual has been, is, or is about to be engaged in criminal wrongdoing to stop the individual where the officer observes the individual commit a traffic violation.

3. SEARCHES AND SEIZURES — STOP AND FRISK.

A police officer does not violate the Fourth Amendment by merely approaching an individual on the street or in a public place, by asking him if he is willing to answer some questions, or by putting questions to him if the person is willing to listen.

4. SEARCHES AND SEIZURES — STOP AND FRISK.

A pat-down search of an individual by a police officer does not violate the Fourth Amendment where such search is conducted during a lawful encounter and after the officer observes behavior which creates a legitimate concern on behalf of the officer regarding his safety.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Garry W. Rapp*, Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford*), for defendant on appeal.

Before: ALLEN, P.J., and MACKENZIE and J. P. SWALLOW,* JJ.

ALLEN, P.J. On January 23, 1984, defendant entered a conditional guilty plea to a charge of larceny in a building, MCL 750.360; MSA 28.592. It was understood that by entering the plea defendant would not waive his right to assert as error on appeal the denial of his motion to suppress evidence which was based on an alleged illegal search and seizure. See, *People v Perez,* 143 Mich App 718, 720-721; 373 NW2d 202 (1985), lv gtd 424 Mich 879 (1986). In exchange for the plea, a second charge of larceny in a building and a charge of possession of marijuana were dismissed. Defendant was sentenced on August 19, 1985, to from sixteen months to four years in prison. He appeals his conviction as a matter of right, raising only the suppression of evidence issue.

At approximately 3:45 A.M. on September 1, 1983, Iosco County deputy sheriffs Ronald Gwizdala and Roger Williams observed the defendant on US 23 near East Tawas, walking with traffic on the shoulder of the northbound lane. Although Gwizdala testified that the defendant was hitchhiking, Williams gave inconsistent statements with respect to whether he was hitchhiking. It appears, however, that hitchhiking was not illegal on this road as it was not a limited-access highway. See MCL 257.679a; MSA 9.2379(1).

The deputies, who were in a patrol car, approached the defendant and asked him what he was doing. They later cited the following facts as their reasons for stopping the defendant: (1) the fact that he was hitchhiking; (2) the fact that he was committing a civil infraction by not walking in a northerly direction in the southbound lane,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

against traffic, see MCL 257.655; MSA 9.2355; (3) the fact that defendant was wearing dark clothing; (4) the fact that defendant was near a business area; (5) the early hour of the morning; and (6) that the deputies had not seen anyone on the road fifteen minutes earlier. Williams stated at one suppression hearing that the deputies were "just suspicious."

Both Williams and Gwizdala testified that when they approached the defendant, the defendant asked them for a ride. The defendant denied this claim but admitted that it had been raining that evening and that he had left Flint at least three hours earlier. The lower court found that the deputies' assertion was valid.

The deputies asked the defendant for identification in contemplation of giving him a ride. According to the deputies, defendant willingly furnished the identification. They then ran a check of defendant on the LEIN computer. While they were waiting for the results, the defendant kept putting his hands in his pockets and was moving towards the back of the patrol car. When Williams asked the defendant to remove his hands from his pockets, he did so but, momentarily, he put his hands back in his pockets. In addition, he appeared nervous. The defendant testified that this behavior was most likely due to the fact that he was cold. However, defendant admitted that he never indicated to the deputies that he was cold. Deputy Williams did a pat-down search for weapons because of this behavior. Defendant did not manifest any objection to this search.

During the pat-down search, Williams felt something in the defendant's shirt or jacket pocket which he said felt like a Kleenex or a baggie of marijuana. According to Gwizdala, Williams asked the defendant what it was, at which point the

defendant broke free of Williams and ran. In doing so, the defendant apparently struck Williams with his right arm and pushed him into a ditch. The officers pursued defendant and, once apprehended, they arrested him for resisting a police officer in the lawful performance of his duty, MCL 750.479; MSA 28.747. After arresting the defendant, the officers performed a search incident to arrest and discovered marijuana in the defendant's pocket.

The defendant was charged with marijuana possession. He was questioned after the arrest and admitted to having stolen two stereos from an Oscoda Ben Franklin store. This confession gave rise to two additional charges of larceny in a building, including the one to which defendant pled guilty.

Defendant argues that the trial court erred in not suppressing the evidence obtained in the search, the subsequent confession, and evidence garnered as a result of the confession. He argues that there was no legitimate basis for stopping him in the first instance, that even if he were validly stopped the deputies had no right to search his person for weapons, and that he had not been stopped and searched, the deputies would not have discovered the marijuana and would not have gained the benefit of his confession. Thus, he argues that if the stop and frisk were invalid, the evidence and confession would have to be suppressed as fruit of the poisonous tree. *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

Originally, the trial court held that the deputies made a valid stop under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), since defendant was in violation of a civil statute. Having found a valid stop, the court held that under the circumstances (isolated area, late at night, defen-

dant's furtive gestures) the deputies' belief that the defendant may have been armed and dangerous, although a close question, was reasonable and justified a pat-down search for weapons. Defense counsel then represented that, although defendant was in violation of the statute, Williams had testified that the reason for the stop was the suspicion of criminal activity. The trial court then held that this suspicion was not sufficient to justify a *Terry* stop. However, the court held that this incident constituted a valid inquiry short of a stop, stating:

> [A]n investigation can arise and can be conducted short of a stop. The restraints upon a citizen are different. The threshold requirements . . . placed upon an officer are different. If an officer wishes to conduct an investigation and make inquiry of passersby, pedestrians on the street, he can do so. He's not engaging in any stop at that point as stop is used as a legal term. He can ask a passerby if they mind answering some questions. If they say, yes, they would, and the passersby are permitted to proceed on, there's no legal stop. In this case, a hitchhiker seeking a ride, a car has a right to stop and discuss giving a ride with a hitchhiker. The officer indicated that the hitchhiker asked for a ride. The officer said they were making up their mind but needed I.D. first. The defendant gave I.D., and while waiting, the circumstance arose that gave rise to the officer's decision to frisk. I would indicate that the frisk was not made incident to a stop in the usual sense of the term.
>
> * * *
>
> And it may be that the Court of Appeals may say that under those circumstances, it not being a valid stop, a frisk could not take place. If the officer was afraid for his own safety, he should have simply left. That would be the alternative to a frisk in a situation where a stop is not being made. I feel that under the circumstances the non-

intrusive frisk where conduct is such during the course of an encounter that an officer doesn't have to mentally catalog the nonstopping encounter as becoming a "stop" so that he can justify a frisk under these circumstances where it's exigent and otherwise authorized.

We will discuss the stop, and the frisk, in sequence.

I

We agree with the trial court's final conclusion, holding that the deputies' initial approach of the defendant was not a stop within the meaning of *Terry, supra.* In order to justify a *Terry* stop, the officers would need "a particularized suspicion, based on an objective observation, that the person stopped has been, or is about to be engaged in criminal wrongdoing. . . . [T]he 'articulable reasons' or 'founded suspicion' or 'particularized suspicion' that criminal activity is afoot must derive from the police officer's assessment of the 'whole picture'—the totality of the circumstances with which he is confronted." *People v Shabaz,* 424 Mich 42, 59; 378 NW2d 451 (1985).

In the present case, the only indicia of criminal activity were (1) the fact that this was near a business district, (2) the fact that defendant was wearing dark clothing, (3) the early hour of the morning, and (4) the fact that the deputies passed through this stretch of road about fifteen minutes prior to their encounter with defendant and had seen no one. These indicia paint a generalized, as opposed to particularized, picture of suspicion. Indeed, the reasons are even more general than the articulated reasons in *Shabaz,* where the Supreme Court held that a *Terry* stop was not justified.

Nonetheless, an officer need not have an articul-

able suspicion to stop an individual as required by *Terry* if the officer observes a traffic violation. *People v Burrell,* 417 Mich 439, 450; 339 NW2d 403 (1983). Defendant concedes that he was violating MCL 257.655; MSA 9.2355, but argues that he was not stopped for the purpose of being issued a citation pursuant to MCL 257.742(1); MSA 9.2442. Rather, he maintains that he was stopped because the officers were "just suspicious."

We note that the trial court's findings with respect to the actual reason for the stop are unclear. It appears that the court ultimately accepted defense counsel's characterization of Deputy Williams' testimony—that the stop was occasioned by a general suspicion. Since the issue herein involves a possible deprivation of a constitutional right, we are guided, but not controlled, by the judge's factual determinations. If, after reviewing the record, we possess a definite and firm conviction that the trial court has erred, we need not accept the finding. *Burrell, supra,* p 449.

Having reviewed the transcript, we do not believe that defense counsel fairly characterized Williams' testimony. A fairer representation of the testimony is that the reason for the stop was suspected criminal activity *and* the fact that defendant was committing a civil infraction. Since the civil infraction provided a legitimate reason to stop the defendant, the fact that the deputies may have had additional reasons which, if isolated, would not justify a stop, is irrelevant.

Alternatively, we find that the encounter constituted a permissible first-tier contact, i.e., an encounter where the officers simply approached the defendant in a public place and asked him questions. See *Shabaz, supra,* pp 56-57. The defendant was not detained by the police but was simply asked what he was doing. Deputy Williams testi-

fied that defendant would have been free to move on at that time. However, instead of declining to answer the deputies' questions and moving on, the defendant asked the deputies for a ride. Thus, it appears reasonable to conclude that at that time the defendant was not being detained by police, but that he voluntarily stayed in the vicinity of the deputies and the patrol car in order to gain a personal benefit, i.e., a ride. Under the circumstances, we decline to hold that this was an unreasonable seizure of defendant's person.

II

Conceding, arguendo, that the deputies may have been justified in stopping defendant because of the civil infraction, defendant maintains that, nonetheless, this stop did not authorize an extended detention or a frisk. Rather, the officers could have briefly detained defendant, issued a citation, or directed defendant to walk facing traffic. Since the officers had a choice about placing the defendant in their patrol car, defendant argues that they should not be permitted to assert that their fear of placing an armed individual in the patrol car justified a frisk.

We note a distinction between frisking an individual as a a precautionary measure before gratuitously placing him into a police vehicle, and frisking a person when, during a lawful encounter, the individual exhibits some behavior which leads the officers to believe that their safety might be endangered. Testimony in the instant case indicates that the pat-down search of defendant was performed only after the officers observed furtive gestures which gave them cause for concern about their safety. Thus, we view *People v Otto,* 91 Mich App 444; 284 NW2d 273 (1979) (holding it permis-

sible to frisk one hitchhiking illegally before transporting him to a site where he could legally hitchhike, despite the lack of particularized concern about the officer's safety), and *People v Scott,* 16 Cal 3d 242; 128 Cal Rptr 39; 546 P2d 327 (1976) (holding it impermissible to frisk an individual whom officers were going to transport gratuitously, where there were no articulable facts which would have given the officers reason to believe that the individual was armed and dangerous), as inapposite.

We have already found that the deputies' initiation of this encounter was permissible. It appears that the continued detention of defendant after the initial stages of the encounter was with defendant's consent and at defendant's behest. Thus, we view the issue as whether the pat-down search was permissible where, during the course of this consensual encounter with defendant, the deputies observed behavior which led them to conclude that defendant might be presently armed and a threat to the deputies' safety.

In *Pennsylvania v Mimms,* 434 US 106, 108-109; 98 S Ct 330; 454 L Ed 2d 331 (1977), quoting *Terry, supra,* 392 US 19, and *United States v Brignoni-Ponce,* 422 US 873, 878; 95 S Ct 2574; 45 L Ed 2d 607 (1975), the Supreme Court stated:

> The touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." . . . Reasonableness, of course, depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."

The law has recognized a weighty public interest in the safety of police officers. See *Terry, supra,*

392 US 23-24; *Mimms, supra,* 434 US 116-119. This interest must be balanced against the intrusion upon the defendant under the circumstances of this case. The defendant had been validly detained due to the civil infraction. He consented to, and indeed, appears to have initiated, an extended contact with the officers. During the course of this encounter, he repeatedly placed his hands in his pockets while inching towards the rear of the patrol car. This behavior persisted even after the deputies asked him to keep his hands out of his pockets. We believe that this behavior was of a nature to create legitimate concern on behalf of the officers regarding their safety. Although the deputies' ability to gain some personal protection by simply leaving the scene makes this a close question, we note that this alternative would not have completely dispelled the risk to the deputies. Accordingly, we do not believe that the limited intrusion created by a pat-down search for weapons was, on balance, an unreasonable search under these circumstances. Therefore, the denial of defendant's motion to suppress evidence is affirmed.

Affirmed.