PEOPLE v PAYTON

Docket No. 97989. Submitted November 18, 1987, at Detroit. Decided February 16, 1988.

Cornelius Payton was bound over for trial in Detroit Recorder's Court on a charge of carrying a concealed weapon. The trial court, Robert L. Evans, J., granted a motion to suppress evidence of the weapon and dismissed the charge, ruling that the police lacked probable cause to stop the defendant and conduct the pat-down search which uncovered the weapon. The people appealed.

The Court of Appeals *held:*

1. The "seizure" of defendant was supported by a reasonable, articulable suspicion that defendant had committed or was about to commit a crime. The police officers, while on routine patrol at night, had heard the sound of gunfire, seen defendant duck between two buildings, seen an automobile leave the scene without its headlights on, and had again seen defendant at the vicinity of where they heard the gunshots.

2. The pat-down search of defendant was supported by a reasonable conclusion that criminal activity may have been afoot and that defendant may have been armed and dangerous.

Reversed and remanded.

D. F. WALSH, P.J., dissented and would affirm the trial judge, reasoning that the trial judge had the advantage of hearing the testimony of the arresting officers and was unpersuaded that the officers had a sufficient basis for making a determination that the man they stopped was the same man they saw in the area where the shots were fired.

1. CRIMINAL LAW — EVIDENCE — APPEAL.

The Court of Appeals will not disturb a trial court's ruling at a suppression hearing unless it is clearly erroneous.

2. SEARCHES AND SEIZURES — STOP AND FRISK.

A police officer may stop and frisk a person if the officer has a

REFERENCES

Am Jur 2d, Searches and Seizures §§ 33, 58, 103.

Law enforcement officer's authority, under Federal Constitution, to "stop and frisk" person—supreme court cases. 32 L Ed 2d 942.

reasonable, articulable suspicion that the person has committed or is about to commit a crime.

3. SEARCHES AND SEIZURES — PAT-DOWN SEARCHES.

A pat-down search of a person not under arrest is reasonable only where, under the factual circumstances existing at the time of the search, the police officer involved reasonably concludes that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

*Defenders' Office—Legal Aid & Defender Association of Detroit* (by *Sherry A. McCameron*), for defendant on appeal.

Before: D. F. WALSH, P.J., and SHEPHERD and A. T. DAVIS, JR.,* JJ.

SHEPHERD, J. The prosecutor appeals from a Detroit Recorder's Court order granting defendant's motion to suppress evidence and dismissing a charge of carrying a concealed weapon against defendant.

Following defendant's preliminary examination, he was bound over on a charge of carrying a concealed weapon. Defense counsel subsequently filed a motion to suppress the evidence or, in the alternative, for an evidentiary hearing. The thrust of defendant's motion was that the police lacked either probable cause or reasonable suspicion to stop and frisk him.

At the evidentiary hearing, Detroit police officer Douglas Weems testified that he was on routine

---

* Circuit judge, sitting on the Court of Appeals by assignment.

patrol at approximately 1:00 A.M. on October 26, 1986, when he heard gunshots fired in the area of Trowbridge and Brush in the City of Detroit. Officer Weems and his partner investigated the area with a search light and observed a man, whom he later identified as defendant, duck between two buildings. There were other people in the area. A moment later officer Weems observed a black car "take off" with its lights off. Officer Weems and his partner followed the car but lost sight of it. They again saw the car and, in the process of following the car, observed the same man they previously had seen disappear between the two buildings standing at Trowbridge and Brush. The officers stopped defendant and patted him down. The pat-down revealed a loaded gun.

The trial court granted defendant's motion to suppress evidence of the weapon. The trial court concluded that the officers had no probable cause to stop the defendant.

First, we note that this Court will not disturb a trial court's ruling at a suppression hearing unless it is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983).

The Fourth Amendment to the United States Constitution proscribes seizures which are not justified by probable cause. *Dunaway v New York,* 442 US 200; 99 S Ct 2248; 60 L Ed 2d 824 (1979). In *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the Supreme Court noted that whenever a police officer accosts an individual and restrains his freedom to walk away he has "seized" that person. *Id.* However, not all seizures of a person must be sustained by probable cause. *Terry* created a limited exception to the requirement of probable cause in a "seizure" of a person if the police officer has a reasonable, articulable suspicion that the person has committed or is

about to commit a crime. See *People v Sovoda,* 155
Mich App 735, 738-739; 400 NW2d 702 (1986), lv
den 428 Mich 898 (1987). Once an officer has
reasonably concluded that criminal activity may
be afoot he may conduct a pat-down search if he
reasonably concludes that the person with whom
he is dealing may be armed and dangerous. *People
v Parham,* 147 Mich App 358, 360; 382 NW2d 786
(1985), lv den 425 Mich 862 (1986), cert den — US
—; 107 S Ct 432; 93 L Ed 2d 382 (1986). Of course,
flight from the police alone does not provide the
reasonable suspicion necessary to justify a *Terry*-
type investigation. *People v Shabaz,* 424 Mich 42,
62; 378 NW2d 451 (1985).

In this case, the police officers, on routine patrol,
heard gunshots in the immediate vicinity. The
officers' search of the area revealed defendant, who
immediately ducked between two buildings. A mo-
ment later they observed a black car leave the
area with its headlights off. Although the car and
defendant apparently had no relationship, defen-
dant was spotted once again, approximately one
minute later, in the immediate vicinity of the
shots. Having heard the gunshots, and seen sev-
eral individuals fleeing the area, we believe the
officers had reasonable grounds to suspect criminal
activity was afoot. Defendant was seen fleeing the
immediate vicinity of the shots by the police offi-
cers. We believe the officers were justified in stop-
ping defendant, and, having heard shots, it was
reasonable to conclude that the person with whom
they were dealing may have been armed and
dangerous. We distinguish this case from those in
which a defendant flees upon seeing a police car
and the police stop and frisk the individual for no
other reason than his flight. See *People v Chester-
nut,* 157 Mich App 181, 183-184; 403 NW2d 74
(1986), lv den 428 Mich 874 (1987). In this case, the

police could reasonably conclude that criminal activity was afoot and that the person with whom they were dealing may have been armed and dangerous. *Parham,* 360. We further note that the standard applied by the trial court was clearly erroneous in that the police officers do not need probable cause under the stop and frisk exception established by *Terry.* It is sufficient if they have a reasonable, articulable suspicion.

Reversed and remanded.

A. T. DAVIS, JR., concurred.

D. F. WALSH, P.J. *(dissenting).* I must respectfully dissent. The trial judge had the advantage of hearing the testimony of the arresting officers. He was obviously unpersuaded after listening to this testimony and observing the officer that the officers had a sufficient basis for making a determination that the man they stopped was the same man they saw in the area where the shots were fired. If the basis for that essentail determination is inadequate, as the trial court apparently concluded, then the foundation for the *Terry* stop collapses.

I would affirm.