## PEOPLE v PEYTON

Docket No. 96413. Submitted January 5. 1988, at Lansing. Decided March 9, 1988.

Tina Marie Peyton's purse was searched after one of her companions was found in a pat-down search to be carrying bullets. The search revealed a gun and a controlled substance. She was convicted of carrying a concealed weapon, possession of a controlled substance and possession of a firearm during the commission of a felony, Oakland Circuit Court, Robert C. Anderson, J. Defendant appealed.

The Court of Appeals *held:*

1. Defendant's convictions for carrying a concealed weapon and felony-firearm do not violate the prohibition against double jeopardy.

2. Defendant did not have standing to challenge the legality of the search of her companion. The search of her companion was reasonable in any case.

Affirmed.

1. CRIMINAL LAW — FELONY-FIREARM — CARRYING CONCEALED WEAPONS — MULTIPLE CONVICTIONS.

A conviction of carrying a concealed weapon and a conviction of possession of a firearm during the commission of a felony may be obtained in the same trial growing out of a single criminal episode when the felony-firearm conviction is based on a distinct felony and the concealed weapon offense is not the predicate of the felony-firearm offense (MCL 750.227, 750.227b; MSA 28.424, 28.424[2]).

2. SEARCHES AND SEIZURES — STANDING.

A defendant must have a reasonable expectation of privacy in the

### REFERENCES

Am Jur 2d, Criminal Law § 220; Searches and Seizures §§ 92-94, 103.

Lawfulness of warrantless search of purse or wallet of person arrested or suspected of crime. 29 ALR4th 771.

Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.

object of a search or seizure which, in the light of all the surrounding circumstances, is one that society is prepared to recognize as reasonable in order to challenge the search or seizure.

3. SEARCHES AND SEIZURES — PAT-DOWN SEARCHES — REASONABLE-NESS.

A pat-down search by a police officer is reasonable where the circumstances lead to a reasonable conclusion that criminal activity may be afoot and the person with whom the officer is dealing may be armed and dangerous.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*Warren D. Bracy,* for defendant.

Before: CYNAR, P.J., and BEASLEY and K. B. GLASER,* JJ.

PER CURIAM. Defendant was convicted by a jury of carrying a concealed weapon, MCL 750.227; MSA 28.424, possession of a controlled substance (cocaine), MCL 333.7214, 333.7403; MSA 14.15(7214), 14.15(7403) and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On September 17, 1986, defendant was sentenced to two concurrent prison terms of from three months to five years on the carrying a concealed weapon (CCW) conviction and the controlled substance conviction and a mandatory consecutive term of two years for the felony-firearm conviction. Defendant appeals as of right. We affirm.

On February 11, 1986, at approximately 11:30 A.M., officers Donald Gundy and Gary Koesters of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the Oak Park Police Department received a radio dispatch that a possible breaking and entering was in progress at 21900 Harding. A neighbor called the police and reported that four black teenagers were attempting to get into the front door at the Harding address.

When the officers arrived, they saw two black males and one black female on the front porch. On the porch, there were a couple of plastic garbage-type bags, two briefcases and a purse. As the officers stopped their car, the three turned away from the door and walked off the porch towards the officers. They met the officers on the driveway. The bags, briefcases and purse were left on the porch.

The officers asked the three for identification, explained that a possible breaking and entering had been reported at the home and questioned them concerning their presence there. All three indicated that they did not have any identification. When questioned about their presence at the home, the three stated that they were trying to awaken Mr. Scoefield because he was supposed to give them a ride to a funeral in Detroit. They did not know Scoefield's first name, age or telephone number. They could not tell the officers exactly where the funeral was or whose funeral it was.

Gundy then asked defendant to get her identification from her purse. Gundy and defendant walked towards the porch. Koesters remained in the driveway with the two males. Defendant first looked through the briefcase and told Gundy that she did not have any identification there. Gundy then directed defendant to look through her purse. Defendant bent down, unzipped her purse while standing in front of Gundy, in what he characterized as an attempt to block his view, removed her wallet and quickly zipped her purse. Defendant

opened her wallet and gave Gundy her driver's license. She then began walking off the porch, leaving the bags, briefcases and her purse. Gundy remained on the porch and, while defendant was walking, Gundy asked her if all of the stuff on the porch belonged to her. She replied that some of it was hers.

In the meantime, Officer Koesters conducted a pat-down search of one of the males and discovered bullets in his pocket. Koesters told Gundy that he found the bullets. Gundy thereafter picked up one of the plastic bags, squeezed the bottom and felt a gun inside. Gundy opened the bag and found a loaded .25 caliber semiautomatic gun among women's clothing. Gundy related this information to Koesters and all three individuals were arrested and handcuffed.

After they were arrested, Gundy searched defendant's purse and found a .38 caliber revolver, a vial and a brown paper bag, both of which contained cocaine. No contraband was found in the other bags. All three were arrested for the semiautomatic found in the bag, although no effort was made by the officers to ascertain its owner. The officers did ask if any one of the three had a concealed weapons permit. The bullets found fit the .38 caliber revolver.

The officers further testified that they were not sure if an attempted break-in had occurred. However, they saw no burglary tools or marks of forcible entry on the doors, windows or the back of the home. The only fact inconsistent with the story told by the three individuals was the items on the porch. Although a calculator was found in one of the briefcases, there were no household items on the porch indicating a burglary had taken place.

Defendant testified that she and her friends did

not attempt to break into the home. They were there only because their friend was going to give them a ride to a funeral. She claimed that the revolver and contraband did not belong to her, she did not know that they were in her purse, and that she never gave anyone permission to place the items in the bag or purse.

On the day of trial, defendant moved to dismiss the felony-firearm charge claiming that she could not be charged with that offense as well as the ccw charge since that constituted double jeopardy. She also filed a motion to suppress the .38 caliber revolver and the contraband alleging that these were seized pursuant to a search after an illegal arrest. Both motions were denied.

On appeal, defendant challenges the denial of both of her motions by the trial court. Defendant argues that the elements of a charge for felony-firearm are identical to those for carrying a concealed weapon. Because the elements are identical, charging defendant with both of these offenses violates her right against double jeopardy.

In *People v Sturgis*, 427 Mich 392, 405-406; 397 NW2d 783 (1986), our Supreme Court held that the double jeopardy clauses of both the United States and Michigan Constitutions did not prohibit both a concealed weapon conviction and a felony-firearm conviction in the same trial stemming from a single criminal episode when the felony-firearm conviction is based on a distinct felony. The Court rejected the contention that it was bound to determine "whether each [statute] requires proof of a fact which the other does not." *Id.*, p 409. Instead, the Court concluded that its obligation was to determine what punishment the Legislature had authorized under the statutes. *Id.*, p 404.

Further, the Court noted:

The conduct made punishable under the felony-firearm statute, is not the mere possession of a firearm. Rather, it is possession of the firearm *during the commission of or attempt to commit a felony* that triggers a felony-firearm conviction. The conduct made punishable by the concealed weapon statute is likewise not the possession of a firearm, it is the carrying of a weapon, concealed. Each statute is directed at a distinct object which the Legislature seeks to achieve through the imposition of criminal penalties. Where the act giving rise to the predicate felony is distinct from the act giving rise to the concealed weapon felony, both convictions are authorized by the Legislature. [Emphasis in original. 427 Mich 409-410.]

In this case, we find no violation of the double jeopardy clause when defendant was charged and convicted of both carrying a concealed weapon and felony-firearm. The felony-firearm offense was based on the distinct felony of possession of cocaine. Consequently, per *Sturgis, supra,* the double jeopardy clause did not prohibit convictions for both carrying a concealed weapon and felony-firearm.

In her second claim on appeal, defendant alleges that the cocaine and gun found in her purse following her arrest should have been suppressed because both the search which revealed the bullets and the search which revealed the gun in the plastic bag were illegal. Based on these illegal searches, defendant was arrested, culminating in the search of her purse.

A court's ruling on a motion to suppress evidence will not be set aside unless clearly erroneous. A ruling is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made. *People v Daniels,* 160 Mich App 614, 617; 408 NW2d 398 (1987). At the outset, we must determine whether defendant has "standing" to

challenge the pat-down search of her male friend which uncovered the bullets and, thereafter, led to the search of the plastic bag. In *People v Smith,* 420 Mich 1, 17; 360 NW2d 841 (1984), our Supreme Court stated that constitutional protections are generally personal. They cannot be asserted vicariously, but rather only "at the instance of one whose own protection was infringed by the search and seizure." *Id.,* quoting *Simmons v United States,* 390 US 377, 389; 88 S Ct 967; 19 L Ed 2d 1247 (1968). In *Smith,* our Supreme Court rejected the "automatic standing rule" and adopted the "reasonable expectation of privacy" test as the one to be utilized in determining whether a defendant has standing to assert the constitutional protection against unreasonable search and seizure. 420 Mich 26. In making this determination the court must decide whether the defendant had an expectation of privacy in the object of the search and seizure and whether that expectation is one that society is prepared to recognize as reasonable. The court should consider the totality of the circumstances. *Id.,* p 28.

In this case, based on the nature of these facts defendant does not have standing to challenge the pat-down search of her male friend. We believe that she had no reasonable expectation of privacy in the pat-down search of her male friend.

However, even if we review the pat-down search, we conclude that it was proper under the two-pronged test enunciated in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). *Terry* requires: (1) a reasonable conclusion that criminal activity may be afoot; and (2) a reasonable conclusion that the person with whom the officer is dealing may be armed and dangerous. In deciding the reasonableness of these conclusions, due con-

sideration must be given, not to the officer's unparticularized suspicion or hunch, but to specific reasonable inferences which the officer is entitled to draw from the facts in light of his or her experience. *Id.,* p 27. The police officer must be "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v New York,* 392 US 40, 64; 88 S Ct 1889; 20 L Ed 2d 917 (1968). In our case, Officer Koester's frisk was reasonable under the circumstances. He patted down the male for weapons because of the suspicious activity at the house. The three individuals could not reasonably explain their presence at the home. Furthermore, they could not produce identification. The officer conducted a pat-down search for safety measures. We are not convinced that the trial court's denial of the motion to suppress was clearly erroneous.

Affirmed.