## PEOPLE v HARMELIN

Docket No. 101536. Submitted April 4, 1989, at Lansing. Decided
April 18, 1989. Leave to appeal applied for.

Calvin Rix and Lawrence Blakeney, Oak Park police officers,
were patrolling a high-crime area of the city in a marked police
car during the early morning hours when they saw a car
driven by Ronald A. Harmelin make a u-turn at an intersection
without stopping for the red light. The officers pulled Harme-
lin's vehicle over to the curb. When requested to do so, Harme-
lin produced his driver's license and vehicle registration.
Harmelin then got out of his car. He informed Rix that he was
carrying a concealed pistol, for which he had a permit. He
handed the permit and safety inspection certificate for the
weapon to Rix. Because Harmelin appeared to be nervous, was
armed, and had a bulge in one of his coat pockets, Rix decided
to conduct a pat-down search of Harmelin. During the search,
some marijuana was found and Harmelin was arrested. A more
thorough search revealed other controlled substances and drug
paraphernalia. Harmelin's car was impounded and an inven-
tory search was conducted. A sum of money and cocaine were
found in the trunk of the car. Harmelin was convicted of
possession of 650 or more grams of a mixture containing
cocaine and of possession of a firearm during the commission of
a felony following a bench trial in Oakland Circuit Court, Gene
Schnelz, J. Defendant appealed. The Court of Appeals initially
reversed the convictions, holding that the cocaine should have
been suppressed as the fruit of an illegal detention. Prior to
publication, the Court, on its own motion, vacated its judgment
and reconsidered the case.

The Court of Appeals *held:*

1. Since the evidence in question is a narcotic, the Michigan
Constitution does not bar its admission. The Court did not find

REFERENCES

Am Jur 2d, Criminal Law § 630; Evidence §§ 412-427; 611-614;
Searches and Seizures §§ 43, 45.

Right of motorist stopped by police officers for traffic offense to be
informed at that time of his federal constitutional rights under
Miranda v Arizona. 25 ALR3d 1076.

that the trial court made a mistake in refusing to suppress the evidence.

2. A conversation between defendant and Officer Rix wherein defendant identified a hard object on his person as marijuana did not violate his right not to be compelled to testify against himself. The limited constraint placed upon defendant's freedom by the officer conducting the pat-down search does not rise to the level of a custodial interrogation and precludes a finding that defendant's admission was compelled by police action.

3. The search of defendant's car was not an unjustifiable intrusion upon his Fourth Amendment rights since the search fell within the automobile exception to the warrant requirement.

4. Defendant was not deprived of effective assistance of counsel or the right to plead not guilty.

5. Defendant's sentence of life in prison does not constitute cruel and unusual punishment.

Affirmed.

1. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — EVIDENCE — NARCOTICS.

The protection against unreasonable searches and seizures in the Michigan Constitution does not bar the use in a criminal proceeding of narcotic drugs seized outside the curtilage of a dwelling house (Const 1963, art 1, § 11).

2. CRIMINAL LAW — CONFESSIONS — PAT-DOWN SEARCHES.

The limited constraint placed on a person's freedom by a police officer's conducting a pat-down search does not rise to the level of a custodial interrogation so as to prevent a finding that the person's incriminating answer to a question was compelled by police action.

3. SEARCHES AND SEIZURES — WARRANTLESS SEARCHES — AUTOMOBILES.

A police officer who has probable cause to believe that contraband is contained somewhere in an automobile may search the entire vehicle, as well as any containers therein, without first obtaining a warrant.

4. CONTROLLED SUBSTANCES — SENTENCING — MANDATORY LIFE SENTENCES — CRUEL AND UNUSUAL PUNISHMENT.

A mandatory life sentence for possession of 650 or more grams of a mixture containing cocaine does not constitute cruel and unusual punishment (US Const, Am VIII; Const 1963, art 1, § 16).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Daniel J. Garber, Jr.,* Assistant Prosecuting Attorney, for the people.

*Carla J. Johnson* (by *James S. Lawrence*), for defendant.

Before: WAHLS, P.J., and HOOD and N. J. KAUFMAN,* JJ.

PER CURIAM. On March 9, 1989, this Court, on its own motion, vacated its judgment in this case issued on January 9, 1989, and retained the matter for reconsideration. Of concern was the effect of a constitutional provision and its case-law precedent, uncited by the parties, on the issue of the propriety of a police officer's ordering a driver out of his car after having stopped the driver for a traffic violation. Two judges of this panel concluded that the Michigan Constitution's search-and-seizure provision provided greater protection to drivers in such a situation than that available under the analogous provision of the federal constitution. Under the latter, a police officer's order to a driver to get out of his car after the car has been lawfully stopped for a traffic violation does not violate the Fourth Amendment even though the officer had no reason to suspect foul play at the time. *Pennsylvania v Mimms,* 434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977). The third judge of this panel, writing in dissent, concluded that the record did not support the assumption that defendant was ordered out of his car by the police and, on the contrary, suggested that defendant had voluntarily gotten out of his car after having been lawfully stopped for a traffic violation.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

On reconsideration, we hold that, even if defendant in this case were ordered out of his car by the police after having been legally stopped for a traffic violation, the narcotics evidence revealed after subsequent searches could not have been suppressed from evidence under the Michigan Constitution's search-and-seizure provision because, under the circumstances in this case, that provision affords defendant with no greater protection than that provided under the analogous federal provision in the Fourth Amendment. Regarding the remaining issues raised by defendant on appeal and not addressed in the January 9, 1989, majority opinion, we adopt the reasoning and conclusions set forth in the dissenting opinion of that date.

The facts in this case were recited in our earlier opinion:

> Defendant, Ronald Allen Harmelin, was convicted after a bench trial of possession of 650 or more grams of a mixture containing cocaine, MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and was sentenced on April 30, 1987, by the Oakland Circuit Court to a mandatory life term of imprisonment for the cocaine conviction and a mandatory two-year term of imprisonment for the felony-firearm conviction. On appeal, defendant argues that his convictions must be reversed because the evidence against him was obtained as a result of an unconstitutional seizure and pat-down search of his person and an unconstitutional search of his car, that his convictions must be reversed because he was deprived of the effective assistance of counsel, and that his sentence for the cocaine conviction must be set aside and a resentencing occur because a mandatory life sentence without the possibility of parole constitutes cruel and unusual punishment. . . .

The record reveals that in the early morning hours of May 12, 1986, two Oak Park police officers, Calvin Rix and Lawrence Blakeney, were patrolling in a marked police car in the area of the Embassy Motel in the City of Oak Park, and at 2:45 A.M. drove into the motel's parking lot to check for stolen vehicles. Numerous stolen vehicles had been found in this lot in the past. At this time, the officers observed defendant's car leaving the parking lot and, although they were called away on other police business at various times that morning, they saw defendant's car entering the Embassy Motel parking lot at about 4:00 A.M. and again at 5:00 A.M. In the three sightings of defendant's car, the officers noticed nothing unusual or illegal in the manner in which defendant's car was being driven.

Shortly after 5:00 A.M., while continuing to patrol the area around the Embassy Motel, Officers Rix and Blakeney saw defendant's car make a u-turn at the intersection of Eight Mile and Hubbell Roads, a high-crime area, without stopping for a red light. When the officers, in their patrol car with its overhead lights flashing, pulled behind defendant's vehicle, defendant responded by stopping in a reasonably prompt fashion. Officer Rix walked to the driver's side of defendant's car, while Officer Blakeney positioned himself at the passenger side of the car. Defendant, who remained seated in his car, complied in a cooperative manner upon being requested by Officer Rix to produce a driver's license and vehicle registration. Defendant then stepped out of his car. Neither of the officers could recall whether defendant was ordered out of his vehicle or whether he got out of it on his own initiative, although Officer Rix testified that if he did in fact order defendant out of the car, that order would have been prompted solely by the nervous behavior exhibited by defendant—behavior described as defendant's having "trouble getting some of the words out." In any event, after getting out of his car, defendant, in a nervous manner, informed Officer Rix that he was

carrying a pistol concealed in an ankle holster. He explained that he had a permit for the weapon, however, and that he did not want the officers to become alarmed. He then handed Officer Rix a general permit to carry a concealed weapon as well as a safety inspection certificate for the .38 caliber, five-shot revolver, which was later found in his ankle holster.

After looking at the firearm documents proffered by defendant, Officer Rix observed nothing which suggested that the papers were possibly invalid. Nonetheless, because defendant appeared to be nervous, because he was armed, albeit legally, and because he had a bulge in one of his coat pockets, Officer Rix, fearing for his own safety and sensing that "[t]here was something wrong," decided to conduct a pat-down search of defendant. In doing so, some marijuana was discovered, and defendant was placed under arrest.

In searching defendant after his arrest, the officers found other incriminating evidence in defendant's possession, including assorted pills and capsules, three vials of white powder, ten baggies of white powder, drug paraphernalia and a telephone beeper. Later, pursuant to the standard policy of the Oak Park Police Department, defendant's car was impounded for a possible forfeiture action, and an inventory search was conducted. During this search, a satchel containing a shaving-kit bag was discovered in the trunk. The kit contained $2900 in cash and two bags of white powder subsequently determined to be 672.5 grams of cocaine. A fingerprint expert testified that defendant's fingerprints were found on books located inside the satchel and next to the bags of cocaine.

Defendant neither testified in his own behalf nor presented any witnesses.

In our earlier opinion, we recognized that in *Mimms, supra,* a majority of the United States Supreme Court held that a police officer's order to a driver to get out of his car after the car was

lawfully stopped for a traffic violation did not violate the Fourth Amendment even when the officer had no reason to suspect foul play at the time, and that other panels of this Court have cited *Mimms* with approbation, *People v Laube,* 154 Mich App 400, 408-410; 397 NW2d 325 (1986), lv den 428 Mich 856 (1987); *People v Blackburne,* 150 Mich App 156, 164-165; 387 NW2d 850 (1986), lv den 425 Mich 869 (1986). Nevertheless, we decided in our earlier opinion that, under the Michigan Constitution's search-and-seizure provision, a driver such as defendant in the present case should be afforded more protection from the police than is afforded under the Fourth Amendment's prohibition against unreasonable searches and seizures. In doing so, we followed the dissent of Justice Stevens in *Mimms,* and thus declared that a police officer, after stopping an automobile for a traffic violation, could not order the driver to get out of the car, and thus protract the driver's detention, unless the test announced in *Terry v Ohio,* 391 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), had been fulfilled, i.e., unless the officer had a reasonable, articulable suspicion that the driver committed, or was about to commit, a crime. We opined that maintaining the *Terry* standard in situations involving traffic stops by police officers would help to ensure that the right to be free from unreasonable seizures would not be wholly eroded in traffic offense cases and, as a corollary, that citizens would not lawfully be vulnerable to unnecessary, intrusive, and intimidating police commands.

On reconsideration, we find that whether Justice Stevens, in his dissent in *Mimms,* had the better argument on this issue is not controlling because in this case we are obliged to follow the majority

decision in *Mimms*. The search-and-seizure provision in the Michigan Constitution provides:

> The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. *The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug,* firearm, bomb, explosive or any other dangerous weapon, *seized by a peace officer outside the curtilage of any dwelling house in this state.* [Emphasis added. Const 1963, art 1, § 11.]

The language of this section itself specifies that the protections granted under the section shall not be construed to bar from evidence any narcotic drug seized by a police officer outside the curtilage of a house. In this case, since the evidence was seized from defendant by the police on the open highway, and therefore outside the curtilage of a house, the protections granted under the state's search-and-seizure provision are not available to defendant. Instead, defendant is entitled only to those protections available to him under the federal constitution. See *People v Catania,* 427 Mich 447, 466, n 12; 398 NW2d 343 (1986); *People v Ragland,* 149 Mich App 277, 281; 385 NW2d 772 (1986); *People v Alfafara,* 140 Mich App 551, 560-561; 364 NW2d 743 (1985). And, as already stated, under federal law, the police were entitled to order defendant out of his car after it was lawfully stopped for a traffic violation. *Mimms, supra.*

After defendant's automobile was lawfully stopped for a traffic violation and after defendant was lawfully ordered out of his car, it is clear that a pat-down search of his person was warranted

under the *Terry* standard, i.e., it was reasonable to conclude that criminal activity might have been afoot and that defendant might have been armed and dangerous. See *People v Payton,* 166 Mich App 428, 430-431; 421 NW2d 191 (1988); *People v Peyton,* 167 Mich App 230, 236-237; 421 NW2d 643 (1988). Defendant, in a high crime area during early morning hours, was admittedly carrying a pistol in an ankle holster, appeared to be extremely nervous, and had a bulge in one of his coat pockets which led the arresting officer to believe that defendant could have been carrying a second concealed weapon. Fearing for his safety and for that of his partner, and believing that, "[i]f [defendant] had, in fact, guns in his pockets where the bulges were, they could have been used on me, and I wouldn't have had a chance to respond," the officer conducted a pat-down search on defendant.

In the present case, defendant, prior to trial, moved to suppress the narcotics evidence against him on the ground that the detention and pat-down search to which he was subjected violated his Fourth Amendment rights. It is well established that evidence derived from an illegal seizure must be suppressed as the "fruit of the poisonous tree." *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963); *People v Shabaz,* 424 Mich 42, 65; 378 NW2d 451 (1985), cert dis 478 US 1017; 106 S Ct 3326; 92 L Ed 2d 733 (1986). The trial court denied defendant's pretrial suppression motion. This Court will not disturb a trial court's ruling on a suppression motion unless that ruling is clearly erroneous. *Payton, supra,* p 430; *Peyton, supra,* p 235; *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983). We will find such a ruling clearly erroneous if firmly convinced that a mistake has been made. *People v Daniels,* 160 Mich App 614, 617; 408 NW2d 398 (1987). We discern no

reason to disturb the trial court's ruling in this case.

Regarding the remaining issues raised on appeal by defendant, we agree with the reasoning and conclusions set forth in the dissenting opinion filed with our January 9, 1989, decision. We will review very briefly each of those issues.

First, defendant argues that his right not to be compelled to testify against himself was violated when Officer Rix asked him about the hard object felt in defendant's chest pocket. This conversation took place prior to defendant's arrest. Officer Rix believed that the hard object was another gun and asked defendant what it was. Defendant replied that it was marijuana. The limited constraint placed upon defendant's freedom by the officer's conducting the pat-down search does not rise to the level of a custodial interrogation and precludes a finding that defendant's admission was compelled by police action. *People v Hill*, 429 Mich 382, 397; 415 NW2d 193 (1987).

Second, the warrantless search of defendant's car was not an unjustifiable intrusion upon his Fourth Amendment rights such that the fruits of this search should have been suppressed. Defendant's car was properly impounded under the forfeiture provisions of the controlled substances act, MCL 333.7522; MSA 14.15(7522). However, because the officers' testimony in the present case established that the Oak Park Police Department's standardized procedures did not mandate searching and conducting an inventory of the contents of every container within an impounded vehicle such as defendant's, the inventory search done in this case does not fall within the parameters of *Colorado v Bertine*, 479 US 367; 107 S Ct 738; 93 L Ed 2d 739 (1987); *People v Krezen*, 427 Mich 681; 397 NW2d 803 (1986).

Nevertheless, we find that the search in this case falls within the automobile exception to the warrant requirement enunciated in *United States v Ross,* 456 US 798; 102 S Ct 2157; 72 L Ed 2d 572 (1982), and adopted by this Court in *People v Cruz,* 161 Mich App 238, 241-242; 409 NW2d 797 (1987), lv den 430 Mich 855 (1988). Ten clear plastic bags filled with white powder, three small vials containing white powder, assorted pills and capsules, paraphernalia of the type used to facilitate the ingestion of cocaine, and a telephone paging device were retrieved from defendant's person after his arrest. Moreover, a gun was strapped to defendant's ankle when he was stopped by the officers. These facts establish probable cause to believe that defendant's car contained more controlled substances. Probable cause exists when the facts and circumstances warrant a person of reasonable prudence to believe that the evidence of a crime or contraband sought is in a stated place. *People v Goins,* 164 Mich App 559, 560; 417 NW2d 499 (1987). Although the trial court's denial of the suppression motion was not based on the automobile exception to the warrant requirement, reversal is not mandated where the trial court reaches the right result for the wrong reason. *People v Beckley,* 161 Mich App 120, 131; 409 NW2d 759 (1987), lv gtd on other grounds 430 Mich 858 (1988).

Third, under either the Michigan or federal standard,[1] defendant's claims that he was deprived of the effective assistance of counsel and the right to plead not guilty because (1) his trial counsel

---

[1] *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), sets forth the long-accepted Michigan standard; the federal standard is set forth in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and was applied in *People v Dalessandro,* 165 Mich App 569, 574-575; 419 NW2d 609 (1988), to a claim brought under the Michigan Constitution.

offered no evidence in response to the prosecutor's case-in-chief, but solely confined the defense to attacking the admissibility of evidence found on defendant's person and in his car, and (2) counsel did not argue that defendant was not guilty of knowingly possessing the cocaine found in his trunk, are both without merit. The evidence against defendant was overwhelming, and counsel's strategy in concentrating the defense on the admissibility of the disputed evidence focused upon defendant's best and only chance of acquittal. This choice of strategy was not the functional equivalent of a guilty plea, and defendant was afforded his constitutional right to plead not guilty. *People v Schulz,* 85 Mich App 527; 271 NW2d 305 (1978); *People v Fisher,* 119 Mich App 445; 326 NW2d 537 (1982).

Defendant's last claim is that the mandatory sentence of life in prison is entirely out of proportion to the seriousness of his crime and constitutes a cruel and unusual punishment proscribed by US Const, Am VIII, and Const 1963, art 1, § 16. We disagree. See *People v Harding,* 163 Mich App 298, 329; 413 NW2d 777 (1987), vacated on other grounds 430 Mich 859 (1988).

Affirmed.