## PEOPLE v ALEXANDER

Docket No. 117349. Submitted February 12, 1991, at Grand Rapids.
    Decided March 19, 1991, at 9:20 A.M.

Arthur L. Alexander was convicted of delivery of more than 650
    grams of cocaine following a jury trial in the Recorder's Court
    of Detroit, Donald L. Hobson, J., and was sentenced to the
    mandatory term of life imprisonment. The defendant appealed,
    claiming that the jury was improperly instructed, that he was
    improperly questioned by the prosecutor, and that his sentence
    is invalid as cruel and unusual punishment.

The Court of Appeals *held:*

1. The trial court properly instructed the jury that delivery
    under the controlled substances act includes attempted deliv-
    ery.

2. Questions and comments by the prosecution concerning a
    defendant's silence are permissible for impeachment purposes if
    the silence occurred before the defendant was informed of the
    right against self-incrimination. Because it is unclear from the
    record whether the defendant had been informed of his right
    against self-incrimination before the silence at issue, remand to
    the trial court for a hearing to determine the sequence of
    events is appropriate. If the trial court determines that the
    silence occurred after the defendant was informed of his right
    to remain silent, the court must order a new trial. If the court
    finds that the silence occurred before the defendant was so
    informed, the defendant's conviction must be affirmed, the
    questions and comments being otherwise proper.

3. The mandatory term for this offense of life imprisonment
    is not cruel and unusual punishment.

Affirmed in part and remanded for further proceedings.

1. CONTROLLED SUBSTANCES — JURY INSTRUCTIONS — DELIVERY OF
    CONTROLLED SUBSTANCES.
    The criminal jury instruction which defines delivery of a con-

REFERENCES

Am Jur 2d, Drugs, Narcotics, and Poisons § 40; Witnesses § 497.
Impeachment of defendant in criminal case by showing defendant's
    prearrest silence—state cases. 35 ALR4th 731.

trolled substance as including an attempted delivery is accurate and proper, because the crime of delivery of a controlled substance subsumes an attempted delivery (MCL 333.7105[1]; MSA 14.15[7105][1]; CJI 12.2.03[2], now CJI2d 12.2[7]).

2. CRIMINAL LAW — IMPEACHMENT — SILENCE — SELF-INCRIMINA-
    TION.

    Questions or comments by the prosecution in a criminal trial concerning a defendant's silence before being informed of the right against self-incrimination are permissible for impeachment purposes (US Const, Am V).

3. APPEAL — CRIMINAL LAW — SELF-INCRIMINATION.

    Where it is unclear on appeal whether questions or comments by the prosecution in a criminal trial concerning a defendant's silence were constitutionally permissible for the purpose of impeachment, the appropriate remedy is to remand the case to the trial court for a determination whether the silence at issue occurred before or after the defendant was informed of the right against self-incrimination (US Const, Am V).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training and Appeals, and *Janice M. Joyce Bartee,* for the people.

*Elizabeth L. Jacobs* and *Steven F. Fishman,* for the defendant on appeal.

Before: CAVANAGH, P.J., and MAHER and FITZ-GERALD, JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of delivery of a controlled substance (cocaine) in an amount more than 650 grams, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). He was sentenced to the mandatory term of life imprisonment. We affirm in part and remand for an eviden-

tiary hearing regarding defendant's receipt of *Miranda*[1] warnings.

The testimony in this case established that on July 12, 1988, defendant met with an undercover narcotics officer of the Detroit Police Department and arranged to sell the officer one "kilo" of cocaine for $26,000. The following night, defendant and the officer met in the parking lot of a fast food restaurant on the east side of Detroit where the transaction was to take place. After the officer showed defendant the money, the two waited for defendant's girl friend to arrive in another car with the cocaine. Approximately fifteen minutes later, a car with two individuals arrived. The officer and defendant approached the vehicle, and a female passenger picked up a grocery bag and pulled out a "plastic wrapped brick." She handed the brick to the officer and said, "Check it out." The officer then poked a hole in the bag and noticed a white powdery substance which was later determined to be cocaine. Next, as defendant and the officer were walking back to the officer's vehicle for the money, a backup crew arrived, and defendant was arrested along with the two individuals in the other vehicle.[2]

At trial, defendant testified in his own behalf. Although he admitted offering to sell the officer a kilo of cocaine for $26,000, he claimed that he never intended to sell the officer real cocaine. Instead, defendant claimed he "was going to run a scam" by selling the officer fake cocaine. Defendant said he contacted a friend, J.B., whom he asked to make up a package of fake cocaine and

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] Although all three defendants were charged jointly, their cases were severed because of conflicting defenses, and separate trials were held.

that J.B. agreed. Defendant said that on the evening of the transaction he had his girl friend drop him off at the arranged meeting spot, and then sent her to J.B.'s to get the "package." He explained that after she arrived the transaction took place as planned; however, the next thing he knew the place was full of police officers and he was being arrested. The jury found defendant guilty of delivery of cocaine in an amount over 650 grams.

Defendant now appeals his conviction and sentence as of right. Specifically, defendant claims he is entitled to a new trial because the jury was improperly instructed and because he was improperly questioned by the prosecutor, contrary to the rule announced in *People v Bobo,* 390 Mich 355, 359; 212 NW2d 190 (1973). Defendant also claims that his mandatory life sentence is invalid because it constitutes cruel and unusual punishment.

I

First, we find that the trial court did not err when it read CJI 12.2.03 (definition of delivery and attempted delivery) in response to a jury note asking, "Is it considered a delivery if the defendant did not hand it to the u.c. personally?" Although defendant argues it was improper to define delivery as including an attempted delivery, the definition of delivery under the controlled substances act includes either an actual *or attempted* transfer. MCL 333.7105(1); MSA 14.15(7105)(1). Thus, an attempt is subsumed under the crime of delivery itself, and there is no separate offense of attempted delivery of cocaine. *Wayne Co Prosecutor v Recorder's Court Judge,* 177 Mich App 762, 764; 442 Mich 771 (1989). Moreover, defense counsel's contention that his argument to the jury would have been different

had he known an "attempt" instruction was going to be used is meritless because defense counsel did not focus on the issue of delivery in his closing argument, but rather on defendant's claim that he intended to "run a scam." There was no instructional error.

II

Next, defendant argues that his Fifth Amendment right to remain silent was impermissibly infringed when the prosecutor questioned him concerning his silence at the time of arrest and then further commented upon such silence during closing argument.

The prosecutor's cross-examination of the defendant concluded with the following exchange:

*Q.* Something else that I'm little confused about.

*A.* Yes, sir.

*Q.* The man turns the hat and the police [come] from all over, some in uniform, most of them, and you know—you know it's the man, right?

*A.* Yes, sir.

*Q.* And you figure that you are there, and what you got here in this package is flour?

*A.* Yes, sir.

*Q.* Or something like that?

*A.* Yes, sir.

*Q.* And I assume first thing as they are putting the hands behind your back and putting the cuffs on you, you are saying to the police, hey, man, that's nothing but flour. Isn't that what you said?

*A.* No, sir.

*Q.* Why not?

*A.* Why not? Well, sir, first of all, I was upset because I was being arrested.

Following this exchange, defendant was excused,

and no objection to the line of questioning was raised. The parties then rested. During his rebuttal closing argument, the prosecutor made further reference to defendant's failure to inform the police of his belief that the package did not contain cocaine:

> When you do the evaluating, figure out how you would have been reacting if you were trying to pull a rip, and I am not suggesting that any of you would be incline [sic] to do that, and the police are coming down on you and you know, man, I'm in trouble. What's the first thing you will say when the police are coming down and your hands are behind your back in the fancy bracelets? You are saying, what's going on? That's not even dope. That's Gold Medal flour. I ain't got no dope. Isn't that the first thing you will say, and you are going to say it.

Again, defense counsel raised no objection to this argument.

Although a failure to object at trial normally precludes review on appeal, review is nevertheless appropriate where a significant constitutional question is involved. *People v Gilbert,* 183 Mich App 741, 746-747; 455 NW2d 731 (1990); *People v Davis,* 181 Mich App 354, 355; 448 NW2d 842 (1989).

Recently, our Supreme Court released a series of decisions clarifying the rule announced in *Bobo, supra* at 359-361, regarding reference during trial to a defendant's silence. *People v Sutton (After Remand),* 436 Mich 575; 464 NW2d 575 (1990); *People v McReavy,* 436 Mich 197; 462 NW2d 1 (1990); *People v Cetlinski,* 435 Mich 742; 460 NW2d 534 (1990). In each of these cases, the Supreme Court held that *Bobo* is to be construed as being coextensive with federal precedent. *Sut-*

*ton* at 599; *McReavy* at 201; *Cetlinski* at 759. Consistent with federal precedent, the Supreme Court then stated in *Sutton* at 592, 599:

> United States Supreme Court cases decided subsequent to our holding in *Bobo* establish that when a defendant takes the stand and testifies the privilege against self-incrimination is waived and the defendant may be impeached with both prearrest silence and *postarrest pre*-Miranda *silence* without violating the Fifth Amendment. *Jenkins v Anderson,* 447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980); *Fletcher v Weir,* 455 US 603; 102 S Ct 1309; 71 L Ed 2d 490 (1982) (per curiam).
>
> * * *
>
> Construing *People v Bobo* as coextensive with federal precedent, we hold that impeachment of exculpatory testimony with pre- or *postarrest pre*-Miranda *silence* is permissible under the Michigan Constitution. Likewise, a defendant's right to remain silent is protected by the Fourteenth Amendment which precludes the use of a defendant's silence following *Miranda* warnings to impeach an exculpatory story. [Emphasis added.]

In *Fletcher v Weir,* a case similar to this one, the prosecutor impeached a defendant's exculpatory trial testimony by cross-examining him regarding his failure to advance his exculpatory explanation when he was arrested. Although the record was unclear regarding whether *Miranda* warnings had immediately been given, the United States Supreme Court made clear that the use of a defendant's postarrest pre-*Miranda* silence for impeachment purposes was constitutionally permissible. The Supreme Court explained its rationale as follows:

> In *Jenkins,* as in other post-*Doyle* [v *Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976)] cases,

we have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. . . . Finally, in *Anderson v Charles,* 447 US 404, 407-408; 100 S Ct 2180 [65 L Ed 2d 222] (1980), we explained that use of silence for impeachment was fundamentally unfair in *Doyle* because "*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. . . . *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances."

In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. [455 US 606-607.]

In *Cetlinski* at 747-748, our Supreme Court explained that a person's silence may constitute a statement of a party-opponent under MRE 801(d)(2), and that where the use of a defendant's silence for impeachment purposes is constitutionally permissible the use of such silence becomes a question of relevancy, an evidentiary matter. The evidentiary approach recognizes that the common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted[3] and, therefore, that silence may be relevant and probative for impeachment purposes where it would have been natural and expected under the circumstances for the defendant to have asserted the fact or story he relates during trial. *Cetlinski* at 760-761. Also see *People v Collier,* 426 Mich 23; 393 NW2d 346 (1986).

---

[3] See *Cetlinski* at 747; 3A Wigmore, Evidence (Chadbourn rev), § 1042, p 1056.

With these principles and understandings in mind, we now turn to the instant case. Here, defendant gave no testimony regarding any statements made to the police at the time of his arrest, nor was there any other testimony indicating that statements were made. Further, like the situation in *Fletcher v Weir,* the present case involves a postarrest situation where the record is unclear regarding whether and, if so, when defendant received his *Miranda* warnings. As explained above, if the prosecutor's questioning and commentary concerned silence which occurred after *Miranda* warnings were given, the issue is a constitutional one. If not, the issue is strictly an evidentiary matter. Thus, we conclude that the issue concerning receipt of *Miranda* warnings is determinative of the present case.

To the extent the issue is solely an evidentiary one, we would find that error requiring reversal did not occur. We reach this conclusion on the bases that no objections were raised at trial, that defendant has not raised an evidentiary argument on appeal, and because we believe that using defendant's silence for impeachment purposes was proper in this case because the natural thing for a person to do under the circumstances would have been to assert that the cocaine was fake. Thus, from an evidentiary standpoint, we believe the trial judge would have been within his discretion in allowing defendant's silence to be used to impeach him.

However, to the extent the issue is one of constitutional magnitude (i.e., the prosecutor's questioning and commentary concerned silence after *Miranda* warnings were given), we hold that a new trial is warranted, because the prosecutor's injection of the silence issue into trial was deliberate,

the defendant's silence was further emphasized during closing argument, and defendant's credibility was critical to his defense.

Concerning the appropriate means for resolving the present case, we look to federal precedent for guidance. We note that where the record in *Fletcher v Weir* was unclear regarding the receipt of *Miranda* warnings, the United States Supreme Court remanded the case for proceedings consistent with its opinion.[4] Similarly, in another impeachment-with-silence case, where the record did not reveal when, if ever, *Miranda* warnings were given, the Tenth Circuit Court of Appeals in *United States v Massey,* 687 F2d 1348, 1353 (CA 10, 1982), remanded for an evidentiary hearing on the issue.

Accordingly, consistent with the approach taken by federal courts in similar cases, we remand the instant case to the trial court so that an evidentiary hearing may be held regarding the receipt of *Miranda* warnings. If the trial court determines that the prosecutor's questioning and commentary concerned silence after *Miranda* warnings were given, then defendant shall be afforded a new trial, because such questioning and commentary would have been constitutionally impermissible. *Sutton* at 580. However, if the trial court determines that the prosecutor's questioning and commentary concerned pre-*Miranda* silence, then defendant's conviction shall be affirmed, because such questioning and commentary would constitute neither a constitutional violation nor an evidentiary error requiring reversal.

[4] The Sixth Circuit Court of Appeals held that the petitioner (Weir) was not entitled to an evidentiary hearing on the basis that his motion after remand requesting such a hearing failed to allege that any comment was made before the jury regarding his silence which occurred after *Miranda* warnings were given. *Weir v Fletcher,* 680 F2d 437, 438 (CA 6, 1982).

## III

Finally, consistent with established precedent, we hold that defendant's mandatory term of life imprisonment does not constitute cruel and unusual punishment. *People v Harmelin,* 176 Mich App 524, 535; 440 NW2d 75 (1989), lv den 434 Mich 863 (1990), cert gtd — US —; 109 L Ed 2d 742 (1990). See also *People v Harding,* 163 Mich App 298, 329; 413 NW2d 777 (1987), vacated on other grounds 430 Mich 859 (1988), and cases cited therein.

Affirmed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.