## PEOPLE v LOY-RAFULS

Docket No. 119524. Submitted June 9, 1992, at Detroit. Decided March 15, 1993, at 9:05 A.M. In lieu of granting leave to appeal, the judgment of the Court of Appeals is reversed insofar as it vacated the "no parole" provision of the defendant's sentence, and the judgment of the Macomb Circuit Court is reinstated for the reasons stated in *People v Fluker*, 442 Mich 890 (1993). MCR 7.302(F)(1). 442 Mich 890.

Prudencio T. Loy-Rafuls, jointly tried with others before a jury in the Macomb Circuit Court, Frank E. Jeannette, J., was convicted of delivery of more than 650 grams of cocaine and of conspiracy to deliver more than 650 grams of cocaine, and was sentenced to life imprisonment without the possibility of parole. He appealed by leave granted, raising several claims.

The Court of Appeals *held:*

1. In the absence of a showing of prejudice, defendant was not denied a fair trial when information not provided to the defendant's counsel, in violation of a discovery agreement, was presented to the jury.

2. The defendant was not denied the effective assistance of counsel. The presumption that the challenged actions by counsel constituted sound trial strategy was not rebutted, and the defendant failed to demonstrate any prejudice resulting from the alleged deficiencies of counsel.

3. The defendant was not denied a fair trial when the jury witnessed police officers with guns drawn surround him and his codefendants after a power outage in the courtroom. That security measure was reasonable, and the defendant did not request that a cautionary instruction regarding the incident be given to the jury.

4. The hearsay testimony of two police officers who related statements made by two codefendants while arranging the delivery of cocaine was properly admitted under the hearsay exception for statements by coconspirators during the course

REFERENCES

Am Jur 2d, Criminal Law § 630.

Comment Note.—Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment. 33 ALR3d 335.

and in the furtherance of conspiracies. MRE 801(d)(2)(E). Proof of the conspiracy was independently established by a preponderance of the evidence, including evidence indicating that the defendant knew that the cocaine was intended for a third party.

5. The defendant was not denied a fair trial as a result of being tried jointly with his codefendants. The defendant did not move for a separate trial, and he failed to establish that he was prejudiced by the joint trial.

6. The defendant's claim that the statute that allows a prosecutor to object to a defendant's waiver of trial by jury, MCL 763.3; MSA 28.856, violates the Michigan Constitution is without merit. The same claim was rejected in *People v Kirby*, 440 Mich 485 (1992).

7. Comments by the prosecutor, which the defendant alleged were improper, did not deprive him of a fair trial. The defendant did not object to the comments, and any prejudice from the remarks could have been cured by a cautionary instruction. No prejudice resulted when the prosecutor questioned a witness about information the trial court had ruled could not be elicited inasmuch as the defendant's counsel did likewise. The defendant was not prejudiced by any testimony regarding transactions and discussions leading to the transaction for which he was convicted.

8. The mandatory sentence of life imprisonment without the possibility of parole for delivery of 650 grams or more of cocaine, MCL 333.7401(2)(a)(i),(3); MSA 14.15(7401)(2)(a)(i),(3), is so grossly disproportionate as to be cruel or unusual punishment under Const 1963, art 1, § 16. Although the gravity of the offense, when considered alone, supports a conclusion that the mandatory sentence is neither cruel nor unusual, other considerations, including penalties for other serious felonies in Michigan and federal and other states' penalties for similar drug offenses, lead to the conclusion that the mandatory sentence is disproportionate and violates the prohibition against cruel or unusual punishment. Thus, with respect to the defendant and all others who have been sentenced under MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) for delivery of 650 grams or more of cocaine, the portion of MCL 791.234(4); MSA 28.2304(4) denying parole consideration must be struck down. Such defendants are to be subject to the jurisdiction of the parole board and be eligible for parole consideration in accordance with MCL 791.234(4)(a)-(d),(5); MSA 28.2304(4)(a)-(d),(5).

Convictions affirmed and case remanded for modification of sentence.

McDONALD, J., dissenting in part, stated that the defendant's

sentence should be affirmed because the Court of Appeals is bound by Administrative Order No. 1990-6 to follow the decision in *People v Alexander*, 188 Mich App 96 (1991), that the mandatory sentence for delivery of 650 grams or more of cocaine is not cruel or unusual and is bound to follow the Supreme Court in limiting the decision in *Bullock* to convictions for possession.

CONTROLLED SUBSTANCES — SENTENCES — CONSTITUTIONAL LAW —
    CRUEL OR UNUSUAL PUNISHMENT — MANDATORY LIFE IMPRISON-
    MENT.

The statutory penalty of life imprisonment without the possibility of parole for delivery of 650 grams or more of cocaine is so grossly disproportionate as to be cruel or unusual punishment under the Michigan Constitution (Const 1963, art 1, § 16; MCL 333.7401[2][a][i],[3], 791.234[4]; MSA 14.15[7401][2][a][i],[3], 28.2304[4]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, and *Michael Suhy,* Assistant Prosecuting Attorney, for the people.

*Joan Ellerbusch Morgan,* for the defendant on appeal.

Before: MARILYN KELLY, P.J., and McDONALD and REILLY, JJ.

REILLY, J. Defendant appeals by leave granted his jury convictions of delivery of over 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401) (2)(a)(i), and conspiracy to delivery over 650 grams of cocaine, MCL 333.7401(2)(a)(i); MSA 14.15(7401) (2)(a)(i) and MCL 750.157a; MSA 28.354(1), and his mandatory sentence of life imprisonment without possibility of parole, MCL 333.7401(3); MSA 14.15(7401)(3). We affirm defendant's convictions, and remand for a modification of sentence.

I

Defendant first argues that he was denied a fair

trial when information that was not provided to defense counsel in violation of a discovery agreement was presented to the jury.

One of the police officers involved in the case testified that on the day of the offense he observed two of defendant's codefendants sitting on the hood of a car across the street from where the drug transaction was scheduled to occur. The officer also testified that he saw the car in the same spot the day after defendant and his codefendants were arrested and that another police officer gave him the set of keys that he used to start the car. This information was contained in a police report that had not been supplied to defendant or his codefendants.

A trial court has discretion to fashion a remedy for noncompliance with a discovery order or agreement. *People v Taylor,* 159 Mich App 468, 487; 406 NW2d 859 (1987); *People v Clark,* 164 Mich App 224, 229; 416 NW2d 390 (1987); *People v Williams,* 188 Mich App 54, 58-59; 469 NW2d 4 (1991). The exercise of that discretion involves a balancing of the interests of the courts, the public, and the parties. *Taylor, supra* at 487.

After an evidentiary hearing, the trial court concluded that the prosecution's noncompliance was not intentional. Nevertheless, the court decided to strike the challenged testimony and instruct the jury at the end of the trial that the testimony should be disregarded. It appears from the record, however, that no such instruction was ever given.

On the basis of our review of the record, we conclude that the trial court attempted to fashion a remedy based upon the consideration of all the parties involved. The failure to give the curative instruction does not require reversal because defendant has failed to show any prejudice. *Wil-*

*liams, supra* at 59. The testimony did not implicate defendant in any way. Furthermore, there was other evidence that demonstrated that defendant was involved in the actual delivery of the cocaine. Accordingly, we conclude that neither the admission of the police officer's testimony nor the failure to give the curative instruction deprived this defendant of a fair trial.

II

Defendant also asserts that he was denied the effective assistance of counsel.

Because no *Ginther*[1] hearing was held with regard to defendant's claims, our review is limited to deficiencies apparent in the record. *People v Juarez,* 158 Mich App 66, 73; 404 NW2d 222 (1987). We have reviewed the record in this case and conclude that any errors made by counsel were not so serious that counsel was not functioning as an attorney for the purposes of the Sixth Amendment. Furthermore, defendant has not overcome the presumption that the challenged actions might be considered sound trial strategy and has not demonstrated that he was prejudiced by any deficiencies of counsel. *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991).

III

Next, defendant asserts that he was denied a fair trial when a power outage occurred during the trial because after the lights came back on, defendant and his codefendants were surrounded by police officers with guns drawn. Defendant argues

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

that the trial court should have commented on the incident or instructed the jury, but does not indicate what sort of comment or instruction would have been proper. Furthermore, neither defendant nor his codefendants requested any instructions at the time of the incident. Accordingly, appellate review is foreclosed in the absence of manifest injustice. *People v Johnson,* 187 Mich App 621, 628; 468 NW2d 307 (1991).

It appears from the record before us that the security measures employed during the power outage were not unreasonable. In addition, defendant has failed to show the existence of any prejudice.[2] See *People v Meyers (On Remand),* 124 Mich App 148, 165; 335 NW2d 189 (1983). Accordingly, we find no manifest injustice.

IV

Defendant also argues that hearsay testimony elicited from two of the police officers regarding statements of two codefendants made while arranging the cocaine delivery was improperly admitted. Defendant alleges that there was insufficient independent proof of a conspiracy to bring this testimony within the hearsay exception provided by MRE 801(d)(2)(E).

Hearsay statements of a coconspirator are not admissible as an exception to the hearsay rule unless and until the existence of the conspiracy is shown by independent evidence. *People v Vega,* 413 Mich 773, 780; 321 NW2d 675 (1982); *People v Moscara,* 140 Mich App 316, 319; 364 NW2d 318 (1985). A conspiracy must be shown by a prepon-

---

[2] We note that one of defendant's codefendants, who was presumably also surrounded by the police, was acquitted. Therefore, it seems unlikely that the incident prevented the jury from fairly considering the evidence presented.

derance of the evidence. *Vega, supra* at 782; *Moscara, supra* at 319.

In support of his argument on appeal, defendant relies on *Vega, supra,* and *People v Gay,* 149 Mich App 468; 386 NW2d 556 (1986), where the Courts held that reversal was necessary because there was insufficient independent evidence that the defendants in those cases knew or intended that the cocaine would be delivered to a third party. *Vega, supra* at 781; *Gay, supra* at 471. In contrast, the evidence presented in this case, exclusive of the testimony regarding the coconspirator statements, supports a finding that defendant knew that the cocaine was intended for a third party because he actually handed the bag containing cocaine to the undercover police officer. Accordingly, reversal is not required in this case. See *Moscara, supra* at 321-322.

v

Defendant's fifth argument is that he was denied a fair trial when he was tried together with six codefendants. We disagree.

Although some of the codefendants made motions for separate trials, it does not appear from our review of the record that defendant made such a motion.[3] In any event, we conclude that the trial court did not abuse its discretion in denying the motions for separate trials. *People v Hicks,* 185 Mich App 107, 117; 460 NW2d 569 (1990). The defenses of defendant and his codefendants were not antagonistic. Furthermore, because the jury acquitted one of the codefendants, it appears that it was able to separate the testimony regarding each of the defendants and that it was not inclined

[3] The transcript citations relied on by defendant refer to the arguments of the codefendants' counsel.

to find "guilt by association." Accordingly, defendant has failed to establish that he was prejudiced by the joint trial. *Id.*

## VI

Defendant asserts that MCL 763.3; MSA 28.856, which permits a prosecutor to object to a defendant's waiver of a jury trial, violates the Michigan Constitution. This argument was recently rejected by the Michigan Supreme Court. *People v Kirby,* 440 Mich 485, 487; 487 NW2d 404 (1992).

## VII

Next, defendant argues that he was denied a fair trial because of improper remarks by the prosecutor. However, defendant did not object to these comments during trial. To the extent that the remarks may be considered improper, defendant was not deprived of a fair trial, because any prejudicial effect resulting from the remarks could have been cured by a cautionary instruction at trial. *People v Mack,* 190 Mich App 7, 19; 475 NW2d 830 (1991).

Defendant also argues that the prosecutor intentionally questioned a witness regarding the addresses of defendant and his codefendants in spite of the trial court's ruling that such evidence should not be presented to the jury. Defendant cannot claim that he was prejudiced by this questioning because the witness never answered the question posed by the prosecutor and because defendant's attorney himself asked the witness to give defendant's address. Furthermore, we conclude that defendant was not prejudiced by any testimony regarding deals and discussions leading up to the subject transaction.

VIII

Lastly, defendant argues that even though the evidence showed that he was involved in the distribution of two kilograms of cocaine, his sentence of mandatory life imprisonment without possibility of parole constitutes cruel and/or unusual punishment under the United States and Michigan Constitution.

In 1991, the United States Supreme Court determined that Michigan's mandatory penalty for possession of 650 grams or more does not violate the Eighth Amendment prohibition against cruel and unusual punishment. *Harmelin v Michigan,* 501 US —; 111 S Ct 2680; 115 L Ed 2d 836 (1991). However, the Michigan Supreme Court recently heard a challenge to the mandatory sentence for that offense under Const 1963, art 1, § 16. *People v Bullock,* 440 Mich 15, 42; 485 NW2d 866 (1992). The Court found that compelling reasons existed for interpreting the state constitutional provision "cruel or unusual" more broadly than the United States Supreme Court interpreted the Eighth Amendment in *Harmelin.* In *Bullock,* the Court determined that a proper interpretation of the state constitutional provision required it to strike down the mandatory penalty of life imprisonment without parole as unjustifiably disproportionate to the crime of possession of 650 grams or more. However, the Court specifically distinguished the crime of possession from the crimes of delivery of, or possession with intent to deliver, 650 grams or more of cocaine, and did not address the constitutionality of the mandatory penalty for the latter crimes. *Id.* at 37-38, 40. The Supreme Court has subsequently denied leave to appeal in several cases challenging the constitutionality of the mandatory penalty for delivery or possession with

intent to deliver 650 grams or more of cocaine. See *People v Gonzalez,* 440 Mich 910 (1992). In *People v Fluker,* 197 Mich App 225; 494 NW2d 830 (1992), a case involving delivery of 650 grams or more of cocaine, this Court held that mandatory life imprisonment without parole was cruel or unusual punishment under the Michigan Constitution. Pursuant to Administrative Order No. 1990-6, 436 Mich lxxxiv, that decision is binding on this Court. However, for the reasons stated below, we believe that *Fluker* was correctly decided.

In the past, when the state constitutional issue has been presented in the context of delivery or possession with intent to deliver 650 grams or more, Michigan courts have repeatedly upheld the penalty provision and determined that the mandatory life sentence without parole is not cruel or unusual under the Michigan Constitution. *People v Harding,* 163 Mich App 298, 329; 413 NW2d 777 (1987), vacated on other grounds 430 Mich 859 (1988), and cases cited therein.[4] See also *Young v Miller,* 883 F2d 1276 (CA 6, 1989), cert den — US —; 111 S Ct 2886 (1991) (Michigan's mandatory penalty for possession with intent to deliver 650 grams or more upheld under the Eighth Amend-

---

[4] In *People v Alexander,* 188 Mich App 96, 106; 469 NW2d 10 (1991), the defendant was convicted of delivery of more than 650 grams of cocaine. On appeal, this Court rejected the defendant's contention that his sentence of life imprisonment without parole was "cruel *and* unusual," with the following citation:

*People v Harmelin,* 176 Mich App 524, 535; 440 NW2d 75 (1989), lv den 434 Mich 863 (1990), cert gtd — US —; 109 L Ed 2d 742 (1990). See also *People v Harding,* 163 Mich App 298, 329; 413 NW2d 777 (1987), vacated on other grounds 430 Mich 859 (1988), and cases cited therein.

The *Alexander* opinion does not refer to or discuss the phrase "cruel *or* unusual" punishment under the Michigan Constitution. Because *Alexander* did not decide whether mandatory life imprisonment for delivery of more that 650 grams is "cruel or unusual," it is not binding on our decision. Administrative Order No. 1990-6.

ment). Nevertheless, in addressing the constitutionality of the mandatory life sentence without parole in the case before us, we are bound to follow the direction provided by the majority decision in *Bullock* and apply the three-pronged test adopted by the United States Supreme Court in *Salem v Helm,* 463 US 277, 290-291; 103 S Ct 3001; 77 L Ed 2d 637 (1983), which was foreshadowed in *People v Lorentzen,* 387 Mich 167, 171-172; 194 NW2d 827 (1972).[5] This Court is instructed to consider: first, the gravity of the offense and the harshness of the penalty; second, the comparable sentences imposed on other criminals in the same jurisdiction; and third, comparable sentences imposed for commission of the same crime in other jurisdictions.

### A. GRAVITY OF THE OFFENSE

"[T]he collateral effects flowing even from mere possession of cocaine are terrible indeed." *Bullock, supra* at 39. Those collateral effects, which are universally recognized as devastating to addicted individuals, their families, and society as a whole, are considerably magnified when the ramifications of the sale and distribution of this dangerously addictive drug are considered. There is no question that the offense of delivery of 650 grams or more is extremely grave because it may well be life-threatening, and addiction and its consequences are surely foreseeable. If gravity of the offense were the only consideration, there would be no difficulty upholding the mandatory sentencing provision as being neither cruel nor unusual.

---

[5] The *Bullock* majority has chosen to follow the *Lorentzen-Salem* criteria regardless of whether it has survived as a matter of federal constitutional law in the wake of *Harmelin's* majority decision. *Bullock, supra* at 34-35.

### B. COMPARABLE SENTENCES IN MICHIGAN

When the second criterion, comparable sentences in Michigan, is considered, it must be recognized that only the commission of first-degree murder is subject to the same harsh punishment as is imposed for delivery of 650 grams or more of cocaine. The defendant in this case has been punished more severely than he could have been for second-degree murder, rape, mutilation, armed robbery, or other exceptionally grave and violent crimes. *Bullock, supra* at 39-40. A sentence of life imprisonment without parole is mandatory, even though no showing of malice is required, or that a death occurred, or that there is a direct unwilling victim, as is the case in premeditated or felony murder. Nor is it even necessary to show that the defendant has committed a specific crime against property. As noted by the *Bullock* majority, an individual defendant with no prior record, who is a one-time courier, and whose intent to harm is not even considered, should not be made to bear the guilt for all the evils wrought by the drug trade. To be considered constitutionally proportionate, punishment must be tailored to a defendant's personal responsibility and moral guilt. *Harmelin* (White, J., dissenting), *supra* at 2716, adopted by *Bullock, supra* at 39.

> While we emphatically do not minimize the gravity and reprehensibility of defendants' crime, it would be profoundly unfair to impute full personal responsibility and moral guilt to defendants for any and all collateral acts, unintended by them, which might have been later committed by others in connection with the seized cocaine. Persons who independently commit violent and other crimes in connection with illegal drugs can and should be held individually responsible by our criminal justice system. [*Id.*]

We believe, therefore, that *Bullock's* evaluation of the severity of the offense of possession, and the harshness of the penalty for that offense, must also be applied to the offenses of possession with intent to deliver and delivery of 650 grams or more of cocaine. Applying the *Bullock* reasoning, we conclude that the mandatory life sentence without parole, which must be imposed on a defendant convicted of delivery of 650 grams or more of cocaine, whether the defendant was the convicted head of a drug cartel or was a seventeen-year-old with no record who acted as a courier, "leads to an inference of gross disproportionality."

### C. COMPARABLE SENTENCES IN OTHER JURISDICTIONS

The third criterion considers sentences imposed for the same crime in other jurisdictions. As noted by *Bullock,* "no other state in the nation imposes a penalty even remotely as severe as Michigan's for mere possession of 650 grams or more of cocaine. *Bullock, supra* at 40. The same may be said for the offense of manufacture, distribution, or possession with intent to distribute cocaine. Only Alabama provides for a mandatory sentence of life imprisonment without possibility of parole for a first-time drug offender who "knowingly sells, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of" specified amounts of various narcotics, but only when the evidence shows that the defendant possessed ten kilograms or more. Ala Code § 13A-12-231(1), (2)(d)(Supp 1990).

Under the federal drug-control statute, a defendant's conviction for distribution of 500 grams or more of cocaine, but less than 2,000 grams, would require a minimum sentence of five years and a maximum of forty years of imprisonment. Under

the federal sentencing guidelines for a first-time offender with no enhancements, the recommended minimum sentence would be sixty-three to seventy-eight months. United States Sentencing Commission Guidelines Manual, § 201.1 (1990). The penalty increases with the amount of cocaine distributed, and additional enhancement factors are considered, but a first-time offender convicted of distributing 2,000 grams (2 kilograms) would not face a mandatory sentence of life without parole.

Having considered the three prongs of the *Lorentzen-Salem* proportionality analysis adopted in *Bullock,* we are convinced that the statutory penalty of mandatory life without parole for all persons convicted of delivery of 650 grams or more, without consideration of any other factor, is unconstitutionally disproportionate and violates the prohibition against cruel or unusual punishment under Const 1963, art 1, § 16. Therefore, we follow the lead of *Bullock's* majority and strike down, with regard to this defendant, and all others who have been sentenced under the same penalty and for the same offense, that portion of MCL 791.234(4); MSA 28.2304(4) denying such defendants parole consideration. Such defendants shall become subject to the jurisdiction of the parole board and be eligible for parole consideration in accordance with MCL 791.234(4)(a)-(d), (5); MSA 28.2304(4)(a)-(d), (5). See *Bullock, supra* at 42-43.[6]

Defendant's convictions are affirmed. His sentence of mandatory life imprisonment without possibility of parole shall be modified in accordance with this opinion. Remanded for correction of the judgment of sentence. We do not retain jurisdiction.

---

[6] See discussion regarding incongruity with other mandatory penalty provisions for delivery of less than 650 grams in *Bullock, supra* at 43, n 26.

MARILYN KELLY, P.J., concurred.

McDONALD, J. *(dissenting in part).* I dissent in part with respect to issue VIII. I do not agree that a sentence of mandatory life imprisonment without possibility of parole for a person convicted of delivery of cocaine in excess of 650 grams constitutes cruel or unusual punishment under the Michigan Constitution.

Moreover, contrary to the majority's position, pursuant to Administrative Order No. 1990-6, 436 Mich lxxxiv, we are bound to follow *People v Alexander,* 188 Mich App 96, 106; 469 NW2d 10 (1991), which finds the penalty for delivery of over 650 grams of cocaine constitutional under Michigan law.

The panel in *People v Fluker,* 197 Mich App 225; 494 NW2d 830 (1992), failed to mention the *Alexander* decision. I would assume it was unaware of the existence of the decision because it failed to give reasons why it did not follow *Alexander* pursuant to Administrative Order No. 1990-6.

The majority herein acknowledges the existence of *Alexander* and the administrative order, but states it is not bound to follow them because *Alexander* uses the phrase "cruel *and* unusual" rather than "cruel *or* unusual." *Alexander* adopted the analysis in *People v Harding,* 163 Mich App 298; 413 NW2d 777 (1987), which considered whether life imprisonment without parole was "cruel *or* unusual" punishment under the Michigan Constitution. *Alexander's* use of "and" rather than "or" was obviously an oversight.

Further the majority states it is bound to follow the direction provided by the majority in *People v Bullock,* 440 Mich 15; 485 NW2d 866 (1992). To the contrary, we are bound to follow the administrative order because our Supreme Court in *Bullock*

limited its decision to convictions for possession of 650 grams or more and has frequently and consistently denied leave in cases involving delivery or possession with intent to deliver 650 grams or more of cocaine.

I would affirm the sentence.