NOT RECOMMENDED FOR PUBLICATION

No. 17-1861

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 31, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DEON MARTELL PITTMAN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:    DAUGHTREY, STRANCH, and THAPAR, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Deon Pittman appeals his sentence, arguing that he was incorrectly designated a career offender and that his sentence was substantively unreasonable. Because the district court did not plainly err in designating Pittman a career offender and because the sentence was substantively reasonable, we **AFFIRM**.

## I.BACKGROUND

During the summer of 2016, the Drug Enforcement Administration arranged for a confidential source to conduct a series of controlled drug buys from Pittman.  According to Pittman's plea agreement, each transaction involved approximately 25 grams of heroin, totaling at least 100 grams.  Pittman testified at his plea hearing that the quantities involved had been determined by the confidential source:  "Whatever he told me to get[,] that's what I called and got."

Pittman pleaded guilty to a single count of possession with intent to distribute and distribution of controlled substances and was designated a career offender pursuant to United States Sentencing Guidelines (USSG) § 4B1.1(a). The past convictions underlying the career offender designation were for relatively low-level controlled substance offenses; Pittman had been sentenced to probation and, at most, a brief jail term in each case. Prior to the instant offense, Pittman had never served time in prison.

Had Pittman not been designated a career offender, he would have faced an advisory guideline range of 57 to 71 months. The career offender designation increased his guideline range to 151 to 188 months. At sentencing, Pittman requested a downward variance in light of the relatively minor nature of his past and current offenses, arguing that the non–career offender range better reflected his criminal history and the nature of the offenses. The Government requested a smaller downward variance to 98 months. The court ultimately sentenced Pittman to 84 months of imprisonment.

## II.ANALYSIS

On appeal, Pittman raises three arguments concerning the validity of his sentence. We consider each in turn.[1]

### A.     Career Offender Designation

Pittman argues first that he should not be considered a career offender because the Michigan statute under which he was previously convicted is broader than the Guidelines definition of a "controlled substance offense" in two respects. Pittman did not raise these arguments before the district court. He was given the necessary opportunity to do so when, at the

---

[1] Pittman's plea agreement contains a waiver of his right to appeal any sentence within the calculated guideline range. Pittman argues that the waiver is unenforceable for several reasons. We need not consider the validity of the waiver because the government does not seek to enforce it and we will not invoke it *sua sponte*. *See Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012); *see also United States v. Rivera-Gonzalez*, 626 F.3d 639, 642 n.4 (1st Cir. 2010).

end of sentencing, the district court asked, "Are there any objections to the sentence as stated?" Although the district court did not specifically ask for "any objections not previously raised," *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004), we have held that questions almost identical to the one posed here suffice for *Bostic* purposes. *See, e.g.*, *United States v. Kennedy*, 595 F. App'x 584, 587 (6th Cir. 2015) (holding that "[i]s there any legal objection to the sentence as stated, [defense counsel]?" complied with *Bostic* and citing comparable cases). We therefore review for plain error. *Bostic*, 371 F.3d at 872–73. To demonstrate plain error, Pittman must prove: "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015).

USSG § 4B1.1(a) provides that a defendant is a career offender if, among other requirements, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Pittman's argument turns on the meaning of "controlled substance offense," which is defined in USSG § 4B1.2(b) as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

The term "controlled substance" is in turn defined by statute as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V." 21 U.S.C. § 802(6); *see also United States v. Ramos*, 814 F.3d 910, 919 (8th Cir. 2016).

Pittman's prior convictions were for violations of Mich. Comp. Laws § 333.7401, the first subsection of which provides that "a person shall not manufacture, create, deliver, or possess with

intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form." Subsequent subsections delineate different maximum punishments for different types of violations—thirty years of imprisonment for 450 to 1,000 grams of a schedule 1 or 2 substance, for example, *id.* § 333.7401(2)(a)(ii), but only two years for any amount of a schedule 5 substance, *id.* § 333.7401(2)(e), and seven years for a counterfeit prescription form, *id.* § 333.7401(2)(f).

Pittman argues that § 333.7401 contains two different ways of criminalizing conduct that does not violate federal drug laws and so is not properly considered a "controlled substance offense" within the meaning of USSG § 4B1.2(b).

### 1.      Overbreadth of Michigan's Schedules

First, Pittman points to the overbreadth of Michigan's drug schedules as compared to their federal counterparts. Michigan's drug schedules include certain substances, such as Salvinorin A and loperamide, that are not included in the federal drug schedules. *Compare* Mich. Comp. Laws § 333.7212(1)(w) (listing Salvinorin A as a schedule 1 controlled substance) *and id.* § 333.7220(1)(a) (listing loperamide as a schedule 5 controlled substance) *with Lists of: Scheduling Actions, Controlled Substances, Regulated Chemicals*, U.S. Dep't of Just. 6, 10 (Mar. 2018), https://www.deadiversion.usdoj.gov/schedules/orangebook/orangebook.pdf (noting that loperamide was removed from the federal schedules in 1982 and not listing Salvinorin A). Because § 333.7401 criminalizes the distribution of at least some substances that are not "controlled substances" within the meaning of 21 U.S.C. § 802(6), it necessarily criminalizes some actions that are not "controlled substance offenses" within the meaning of USSG § 4B1.2(b). Pittman argues that his past convictions under § 333.7401(2)(a)(iv) therefore also cannot be deemed controlled substance offenses.

To determine whether a given law is a controlled substance offense within the meaning of USSG § 4B1.2(b), we apply the two-step "categorical approach." *See Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016); *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017). First, we ask if the statute is divisible—that is, if it "lists elements in the alternative such that the statute 'comprises multiple, alternative versions of the crime.'" *House*, 872 F.3d at 753 (quoting *Descamps v. United States*, 570 U.S. 254, 262 (2013)). If so, we employ the "modified categorical approach" and consult "a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Id.* (alteration in original) (quoting *Descamps*, 570 U.S. at 257). At the second step, we determine whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches § 4B1.2(b)'s definition of a "controlled substance offense." *Id.* at 753–54.

In *United States v. House*, we held that § 333.7401 is divisible. *Id.* at 753. Pittman disagrees with that holding, but "only the en banc process, a material intervening Supreme Court decision, or a relevant change to the Guidelines permits us to override binding circuit precedent." *United States v. Verwiebe*, 874 F.3d 258, 262 (6th Cir. 2017). Because those circumstances do not apply here, we treat the statute as divisible and so identify the specific subsection of § 333.7401 that Pittman was convicted of violating.

Pittman concedes that he was previously convicted of violating § 333.7401(2)(a)(iv), which describes violations involving "less than 50 grams" of "[a] controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(iv)." Because Michigan's schedule 1 includes at least one drug that is not a federal "controlled substance"— Salvinorin A—we apply the first step of the categorical approach a second time to determine

whether subsection § 333.7401(2)(a)(iv) is divisible. In other words, we must determine whether the many different substances listed in schedule 1 are alternative elements or alternative means.

In this case, as in *Mathis*, we may answer this question by reference to state caselaw. *See* 136 S. Ct. at 2250 (citing an Iowa Supreme Court case for the proposition that the listed terms in the relevant burglary statute were "alternative method[s] of committing [the] single crime"). Michigan courts frequently note that the specific substance a defendant is charged with possessing or delivering is one of the elements of a § 333.7401 violation. *See, e.g.*, *People v. Wolfe*, 489 N.W.2d 748, 752 (Mich. 1992) (listing "the recovered substance is cocaine" as an element of possession with intent to deliver less than 50 grams of cocaine); *People v. Williams*, 811 N.W.2d 88, 93 (Mich. Ct. App. 2011) (listing "the controlled substance was marijuana or a mixture containing marijuana" as an element of delivery of less than five kilograms of marijuana). Because Michigan courts treat the specific substance as an element of the offense, § 333.7401(2)(a)(iv) is divisible.

There is no dispute in this case that the *Shepard* documents demonstrate that Pittman's prior offenses involved substances that are listed on the federal schedules. His past convictions are therefore "controlled substance offenses" within the meaning of USSG § 4B1.2(b), and the district court committed no error by sentencing him accordingly.

2.    Overbreadth of "Delivery" Under Michigan Law

Pittman next argues that § 333.7401(1) is overbroad because the term "delivery" includes mere offers to sell.

This argument builds on the Fifth Circuit's decision in *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016). *Hinkle* involved a Texas law prohibiting delivery of controlled substances, where another statute defining "delivery" explicitly stated that "[t]he term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia." *Id.* at 572 (quoting Tex.

Health & Safety Code Ann. § 481.002(8)). The Government conceded that a conviction by virtue of "offering to sell" a controlled substance would not fall within the Guidelines definition of "controlled substance offence" in USSG § 4B1.2(b). *Id.* The Fifth Circuit, applying *de novo* review, determined that the element of "delivery" was indivisible and so that there was a categorical mismatch with the federal definition. *Id.* at 574–76.

We have already explained, albeit in an unpublished opinion, that *Hinkle* does not guide our interpretation of whether § 333.7401 is divisible. *See Tibbs*, 685 F. App'x at 462–63. *Hinkle* likewise does not support a conclusion that the meaning of "delivery" in § 333.7401 is necessarily broader than in the federal equivalent. Significantly, Michigan's statutory definition of delivery is functionally identical to the federal provision. *Compare* Mich. Comp. Laws § 333.7105(1) (defining delivery as "the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship") *with* 21 U.S.C. § 802(8) (defining delivery as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship"). Unlike the Texas law at issue in *Hinkle*, the Michigan statute makes no mention of offers to sell.

Nor has Pittman identified any cases in which a defendant was convicted of delivery based solely on an offer to sell. The case on which Pittman relies, *People v. Alexander*, 469 N.W.2d 10 (Mich. Ct. App. 1991), is distinguishable. *Alexander* involved a defendant who claimed to have planned to trick a police officer by having his girlfriend give the officer fake cocaine. *Id.* at 12. The substance given to the officer, however, "was later determined to be cocaine." *Id.* The case did not turn on whether the statute criminalized a mere offer to sell, but rather on delivery by an individual other than the defendant: The jury asked whether delivery by a third party was

considered a delivery, and the court properly responded by reading the statutory definition of delivery and attempted delivery. *Id.*

Because Michigan's statutory definition of delivery does not include mere offers to sell and because Pittman has not identified any case in which the statutory provision has been so interpreted, the district court did not err—much less plainly err—in concluding that Pittman was a career offender within the meaning of USSG § 4B1.2(b).

### B. Substantive Reasonableness

Finally, Pittman argues that his sentence was substantively unreasonable. "[A]ll challenges to the substantive reasonableness of a sentence are reviewed for abuse of discretion" regardless of whether the claim was preserved below. *United States v. Taylor*, 800 F.3d 701, 713 (6th Cir. 2015) (quoting *United States v. Richards*, 593 F. App'x 500, 504 (6th Cir. 2014)). "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). A sentence may be substantively unreasonable if the court "selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Bass*, 785 F.3d 1043, 1052 (6th Cir. 2015) (quoting *United States v. Abdulmutallab*, 739 F.3d 891, 908 (6th Cir. 2014)). Defendants who, like Pittman, received below-guidelines sentences may successfully bring a substantive-reasonableness challenge, but they "bear a heavy burden." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

Pittman argues that his sentence was substantively unreasonable because his past offenses were minor, nonviolent, street-level drug crimes resulting in sentences of probation rather than prison time. He cites a 2016 report by the United States Sentencing Commission, which concluded that "[d]rug trafficking only career offenders are not meaningfully different from other federal

drug trafficking offenders and should not categorically be subject to the significant increases in penalties required by the career offender directive." *Report to the Congress: Career Offender Sentencing Enhancements*, U.S. Sentencing Comm'n 3 (Aug. 2016), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf. For example, the report explains that although career offenders with a history of committing violent crimes are rearrested at a significantly higher rate than most of the prison population, the rearrest rate of career offenders whose prior offenses involve only drug trafficking is relatively similar to non–career offenders. *Id.* at 40–41.

As we have noted in a recent unpublished opinion, "while sentencing judges may certainly consider arguments based on research compiled by the Commission pursuant to its mission, the recommendations are not law at this point." *United States v. Blackman*, 678 F. App'x 400, 401 (6th Cir. 2017). A sentencing court may also properly consider whether the calculated guideline range overstates the severity of a defendant's criminal history. *See United States v. Collington*, 461 F.3d 805, 808–09 (6th Cir. 2006). The sentencing transcript here reflects that the district court did so, acknowledging that it was "very unusual" for a career offender never to have served time in prison. The court then weighed that consideration against other sentencing factors, such as the large number of offenses Pittman had committed before age 26 and the apparent failure of probationary sentences to deter him from committing future crimes. The court also highlighted the importance of protecting the public from drug crimes. After balancing those competing interests, the court concluded that a downward variance from the suggested minimum of 151 months to 84 months was appropriate.

Because the record demonstrates that the district court based Pittman's sentence on appropriate considerations, we cannot agree that the district court abused its discretion by declining

to vary further from the recommended sentencing range.  The sentence was therefore substantively reasonable.

## III.CONCLUSION

For the foregoing reasons, we **AFFIRM** Pittman's sentence.