# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CORNELIUS WARE,

        Defendant-Appellant.

UNPUBLISHED
March 22, 2016

Nos. 323710; 323711
Wayne Circuit Court
LC Nos. 14-000562-FH;
          14-000563-FH

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of sending or delivering an explosive substance with the intent to injure a person or destroy property, MCL 750.204(2)(b), second-degree arson, MCL 750.73(1), two counts of assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), aggravated stalking, MCL 750.411i(2)(a), and felon in possession of a firearm, MCL 750.224f, for firebombing his ex-girlfriend's family's residence on two separate occasions in September 2013. The court sentenced defendant as a fourth habitual offender, MCL 769.12, to 26 to 50 years' imprisonment for each conviction. Defendant raises several challenges to trial counsel's performance and to his sentences. We affirm defendant's convictions, but remand to the trial court to determine the need for resentencing as required by *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. BACKGROUND

After a lengthy relationship marred by domestic violence, Iris Johnson broke up with defendant in the summer of 2013. Displeased with this turn of events, defendant engaged in a harassing course of conduct, frequently telephoning Johnson and threatening to kill her family and blow up their residence. Johnson, who lived with her mother, siblings, and several nieces and nephews, feared for everyone's safety. In July 2013, someone fired shots at her home, and in August, someone unsuccessfully attempted to firebomb the house on more than one occasion. Johnson did not report these incidents to the police.

On September 7, 2013, however, Johnson caught defendant in the act. As she sat on a porch across the street, Johnson observed two men approach her house. One was dressed all in black and threw a firebomb at the home. The second man dropped his firebomb on the lawn. As the men ran away, Johnson recognized defendant as the man in black. Johnson summoned the fire department and her friend burned his leg trying to assist the family. Following this incident,

-1-

Johnson secured a personal protection order (PPO) against defendant but was unable to serve him with it until after his September 27 arrest.

On September 27, 2013, Johnson, her sister, and several nephews were sleeping in an upstairs bedroom. Someone threw a brick through a second-floor window centered above the home's staircase to the main floor. A firebomb followed the brick and caught the curtains on fire. Someone threw a second firebomb at the home's back door. The women and children were forced to skirt fire and smoke to descend the stairwell, their only means of escape. Johnson did not observe defendant at the home that day, but based on the prior incident and his many threats, Johnson identified defendant as the likely perpetrator. She described defendant and his vehicle, a white van, to the responding officers. Johnson's sister did observe defendant standing in the yard, however. The officers found two additional unused "Molotov cocktails" in the backyard.

Based on information provided by Johnson, Detroit police officers travelled to a home on Waverly Street in Detroit. Defendant was standing outside, talking on a cell phone. Upon seeing the police, defendant tried to go into the house, but the occupants denied him entry. Defendant told the officers that he had been at the Waverly Street address all day, leaving only briefly on foot to purchase gasoline. However, defendant could not produce the container that he had allegedly filled. And defendant smelled strongly of gas. The police impounded defendant's van, which was parked in the street outside the house. Inside, they found a shotgun and two shotgun shells.

## II. ASSISTANCE OF COUNSEL

### A

Defendant contends that his trial counsel should have investigated and presented witnesses to support his alibi defense. At trial, defendant claimed that he was with Eddie McCampbell at McCampbell's home on September 7 and with Jeffrey, Crystal and Sharon Hall, Crystal's mother, Marlon Carter and David Donnell Hughes at the Waverly Street address during the September 27 incident. He asserts that his trial counsel never spoke to these individuals.

Although defendant filed a motion to remand to the trial court for a hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), this Court denied that motion. *People v Ware*, unpublished order of the Court of Appeals, entered July 23, 2015 (Docket Nos. 323710, 323711). As such, our review is limited to mistakes apparent on the existing record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of

reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902; 870 NW2d 893 (2015).]

Defense counsel possesses "wide discretion in matters of trial strategy." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). And decisions regarding what witnesses to present are generally considered strategic, supporting relief only when the defendant is denied a substantial defense based on a witness's absence. *Payne*, 285 Mich App at 190. A defense is substantial "if it might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." [*Wiggins v Smith*, 539 US 510, 521-522; 123 S Ct 2527; 156 L Ed 2d 471 (2003), quoting *Strickland*, 466 US at 690-691.]

See also *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012); *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). The failure to conduct an adequate investigation comprises ineffective assistance if it undermines confidence in the outcome of the trial. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

The existing record does not support defendant's claim that defense counsel failed to conduct an adequate investigation. Defendant's August 1, 2014 witness list included "David Huges" as well as Jeffrey and Crystal Hall. Defendant's appellate attorney presented an affidavit to this Court, indicating that she spoke to David Donnell Hughes by telephone on June 10, 2015. Hughes corroborated that he was with defendant at the time of the September 27 firebombing and would have testified at defendant's trial, but that trial counsel never contacted him. Hughes promised to sign an affidavit prepared by appellate counsel, but thereafter failed to return counsel's calls and never signed an affidavit. Appellate counsel contacted trial counsel to discuss the matter and trial counsel indicated that she never spoke to Hughes because the number provided was "not in service." Interestingly, appellate counsel made no mention of trying to contact any of the other potential alibi witnesses identified by defendant.

It appears that trial counsel did attempt to investigate, just as appellate counsel tried to do, but was blocked by uncooperative witnesses. Unable to speak to the potential alibi witnesses, trial counsel likely chose not to file a notice of alibi defense as required by MCL 768.20(1).[1] Given the circumstances, we cannot find trial counsel ineffective in this regard. In the end, defendant was able to present his claim of alibi to the jury through his own testimony. And in light of the eyewitness testimony placing defendant at the scene of the firebombings, defendant's odor when interviewed by police on September 27, and his inability to substantiate that he had filled a benign container with gasoline, we cannot conclude that defendant likely sustained prejudice as a result of the absence of his proposed alibi witnesses.

B

Defendant contends that counsel should have sought to suppress the evidence discovered in his van at the time of his arrest. The van was legally parked, defendant insists, and the police had no valid reason to seize and search it, rendering the gun discovered during the search inadmissible.

US Const, Am IV and Const 1963, art 1, § 11 guarantee the right of persons to be secure against unreasonable searches and seizures. As a general rule, officers must obtain a warrant based on probable cause to seize and search property. *People v Davis*, 442 Mich 1, 10; 497 NW2d 910 (1993). If a search conducted in violation of this rule uncovers evidence, that evidence usually must be suppressed. *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993). There are exceptions to the warrant requirement, however, and evidence collected during a permitted warrantless search is admissible. *Davis*, 442 Mich at 10.

One exception to the warrant requirement is for an "inventory search." In *South Dakota v Opperman*, 428 US 364, 370-371; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the United States Supreme Court held that law enforcement officers do not violate the Fourth Amendment when they follow standard procedures to inventory the contents of a lawfully impounded automobile, as long as the impoundment and inventory search were not a pretext and as long as the scope of the search was reasonable. The goal is to preclude inventory searches that are "a ruse for general

---

[1] The statute provides:

> If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

rummaging in order to discover incriminating evidence," not to impede the legitimate conduct of inventory searches. *People v Poole*, 199 Mich App 261, 266; 501 NW2d 265 (1993).

Highland Park Police Officer Michael Ochs testified that Johnson told him that defendant lived on Waverly but she did not know the house number. She described defendant's vehicle to assist in locating him. Ochs and his partner travelled to Waverly and discovered the white van parked in the street in front of a house. When defendant was placed under arrest, he "couldn't . . . give the [the officers] an answer on where he was staying so [they] decided to tow [the] van for safekeeping for [defendant]." Ochs clarified that the officers did not want to leave the van in the street and defendant offered no family member who could take custody of the vehicle so the officers had the van towed to the impound lot "so nothing [would] happen to it." Ochs testified that it was department policy to conduct an inventory of all towed vehicles to protect the vehicle owners' property rights and to protect the police from false claims of theft or property damage.

Here, as in *Opperman*, 428 US at 375, defendant could make no "other arrangements for the safekeeping of his belongings" while he was in police custody. There is no record indication that the vehicle was parked illegally, but it is possible that the officers were concerned the vehicle might be stolen or vandalized, or that the vehicle would have to be moved on an upcoming garbage day. However, regardless of whether the officers could validly conduct an inventory search, they also had probable cause to conduct a search without a warrant. It is well established that if police officers have probable cause, they are permitted to conduct a warrantless search of a vehicle, "even after it has been impounded and [taken] in police custody." See *Michigan v Thomas*, 458 US 259, 260-261; 102 S Ct 3079; 73 L Ed 2d 750 (1982); *People v Romano*, 181 Mich App 204, 217; 448 NW2d 795 (1989).

The officers in this case had probable cause to search defendant's van for evidence of the firebombings. "Probable cause exists when the facts and circumstances warrant a person of reasonable prudence to believe that the evidence of a crime or contraband sought is in a stated place." *People v Harmelin*, 176 Mich App 524, 534; 440 NW2d 75 (1989), aff'd sub nom *Harmelin v Michigan*, 501 US 957; 111 S Ct 2680; 115 L Ed 2d 836 (1991). The question is "whether the facts and circumstances known to the officers would warrant a person of reasonable prudence to believe that evidence of a crime or contraband sought is in a stated place." *People v Carter*, 194 Mich App 58, 61; 486 NW2d 93 (1992). "A search of an automobile when probable cause exists 'is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.' " *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999), quoting *United States v Ross*, 456 US 798, 809; 102 S Ct 2157; 72 L Ed 2d 572 (1982). Eyewitnesses placed defendant at the scene of the firebombings. It was reasonable for the officers to believe that defendant drove to the scene of the crime in his vehicle. Accordingly, the officers were justified in searching defendant's vehicle for evidence of his involvement in these crimes, either at the scene of his arrest or following the vehicle's impoundment. Any motion to suppress the evidence would have been futile and counsel cannot be deemed ineffective for failing to raise it. *People v Mack*, 265 Mich App 122, 130; 695 NW2d 342 (2005).

C

Defendant also challenges counsel's failure to object to the admission of the PPO secured by Johnson against defendant. He claims that this evidence was improperly used to bolster Johnson's credibility. This evidence was admissible, however, to establish the elements of the aggravated stalking charge.

"Stalking" is defined by statute as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411i(1)(e). The making of a "credible threat" enhances a charge to aggravated stalking and is defined as "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual." MCL 750.411i(1)(b).

The fact that Johnson secured a PPO was evidence that defendant's threats against Johnson were "credible" and caused Johnson to fear for the safety of her and her family. The PPO itself proved that Johnson actually secured the legal document. The evidence was therefore relevant and admissible. See MRE 401 (defining "relevant evidence" as "evidence having any tendency to make the existence" of a material fact "more probable or less probable than it would be without the evidence"); MRE 402 ("All relevant evidence is [generally] admissible."). Defendant does not contend that the PPO was rendered inadmissible under any exception to the evidentiary rule in MRE 403. Admission of the PPO was also consistent with MCL 600.2106, which states:

> A copy of any order, judgment or decree, of any court of record in this state, duly authenticated by the certificate of the judge, clerk or register of such court, under the seal thereof, shall be admissible in evidence in any court in this state, and shall be prima facie evidence . . . of all facts recited therein, and of the regularity of all proceedings prior to, and including the making of such order, judgment or decree.

Because the PPO was properly admitted into evidence, counsel had no ground to object and defendant cannot support his ineffective assistance claim. *Mack*, 265 Mich App at 130.

### III. JUDICIAL FACT FINDING

Defendant contends that the trial court improperly based his sentences on facts found by the judge rather than the jury in violation of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). He specifically challenges the circuit court's scoring of Offense Variables (OVs) 4, 10, and 14. Defendant failed to preserve his challenge by objecting on this ground in the trial court. Accordingly our review is limited to plain error. See *People v Lockridge*, 498 Mich 358, 392-393; 870 NW2d 502 (2015).

> Recently, our Supreme Court relied on *Alleyne* in holding that Michigan's sentencing scheme, which permits judicial fact-finding in scoring the offense and prior record variables, violates the Sixth Amendment. *Lockridge*, 498 Mich at

388-389. The Michigan Supreme Court remedied that defect by rendering Michigan's sentencing guidelines advisory, just as the United States Supreme Court had done with regard to the federal sentencing guidelines in *United States v Booker*, 543 US 220, 233; 125 S Ct 738; 160 L Ed 2d 621 (2005). *Lockridge*, 498 Mich at 365.

> Although Michigan's sentencing guidelines are "constitutionally deficient," our Supreme Court decreed in *Lockridge* that trial courts must still score the offense and prior record variables and assess the "highest number of points possible" for each one. *Lockridge*, 498 Mich at 392 n 28. A sentencing court is obligated to "consult the applicable guidelines range and take it into account when imposing a sentence." *Id.* at 392. [*People v Masroor*, ___ Mich App ___; ___ NW2d ___ (Docket No. 322280, issued November 24, 2015), slip op at 6.]

In *People v Stokes*, ___ Mich App ___; ___ NW2d ___ (Docket No. 321303, issued September 8, 2015), slip op at 8-9, this Court distilled the procedure set forth in *Lockridge* for trial courts to reconsider sentences when faced with an unpreserved challenge:

> Noting that "virtually all" of these cases involve unpreserved challenges, our Supreme Court described a procedure, the goal of which is to determine whether a *Lockridge* error resulted in prejudice to any given defendant. Such an inquiry is necessary because unpreserved constitutional errors are subject to plain-error review, which requires a defendant to demonstrate not only that an error occurred, but that "the error affected the outcome of the lower court proceedings." Our Supreme Court held that if a defendant is able to "establish a threshold showing of the potential for plain error," the case must "be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing." The precise procedure to be followed, modeled on that adopted in *United States v Crosby*, [397 F3d 103 (CA 2, 2005),] is as follows:
>
>> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by [MCR 6.425], if it decides to resentence the defendant. Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the circumstances existing at the time of the original sentence. [Citations omitted.]

In calculating defendant's total OV score of 80, the court relied on factors that were not elements of the charged offenses and were therefore not decided by the jury.

-7-

In relation to OV 4, psychological injury to the victim, a 10-point score is appropriate if the victim suffers "[s]erious psychological injury requiring professional treatment," regardless of whether such treatment is sought. MCL 777.34(1)(a), (2). The Department of Corrections recommended no points be scored for this variable. The prosecution, however, requested a 10-point score because Johnson's four-year-old nephew, who was asleep in the home during the September 27 firebombing, had been fearful at bedtime since the incident. The child's grandmother testified regarding his emotional condition at defendant's sentencing hearing. The court properly assessed points for OV 4 based on this evidence. See *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012); *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). However, this was a judge-found fact.

The DOC also recommended no score for OV 10, but the trial court assigned 15 points on the prosecution's request. OV 10, "exploitation of a vulnerable victim," should be scored 15 points when the defendant engaged in "predatory conduct." MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). "To victimize is to make a victim of someone, and a victim is a person who suffers from a destructive or injurious action." *People v Ackah-Essien*, 311 Mich App 13, 37; ___ NW2d ___ (2015) (2015). "[P]redatory conduct" therefore references "behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008). The primary concern in assessing points under this variable is "the exploitation of vulnerable victims." *Id.* at 157. Therefore, "points should be assessed . . . when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation," and that the vulnerable victim was exploited. *Id*. at 158-159.

In arguing in favor of this score, the prosecution stated, "This case is one of domestic violence that initially started over a relationship, and the testimony is or was that there was behavior on behalf of the defendant attempting to control her and that in terms of her leaving him, and this is what accelerated or initiated all of this." Indeed, defendant's harassing phone calls and threats primed the pump, making Johnson fearful. On September 27, defendant waited until the family was asleep, throwing a firebomb into the home in a location that would impede the escape of Johnson, her sister, and several young children. See *Ackah-Essien*, 311 Mich App at 37 ("The timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct.") Accordingly, we discern no error in the scoring of this variable.

It is a closer question whether OV 10 was actually scored on judge-found facts. In considering this issue, "[t]he touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an 'element' or 'ingredient' of the charged offense." *Alleyne*, 133 S Ct at 2158.

> [T]he essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact. [*Id*. at 2162.]

Here, the offense of aggravated stalking is equivalent to "predatory conduct" and "victimization." MCL 750.411i provides, in relevant part:

(1) As used in this section:

(a) "Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose.

(b) "Credible threat" means a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual.

(c) "Emotional distress" means significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling.

(d) "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

(e) "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(f) "Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

\* \* \*

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

(g) "Victim" means an individual who is the target of a willful course of conduct involving repeated or continuing harassment.

(2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:

(a) At least 1 of the actions constituting the offense is in violation of a restraining order and the individual has received actual notice of that restraining order or at least 1 of the actions is in violation of an injunction or preliminary injunction.

\* \* \*

(c) The course of conduct includes the making of 1 or more credible threats against the victim, a member of the victim's family, or another individual living in the same household as the victim. . . .

The act of aggravated stalking amounted to predatory conduct directed at a victim for the primary purpose of victimization, preceded the firebombing of the victim's residence, and was used to make Johnson vulnerable for the attacks. Accordingly, the trial court did not score this factor based on judge-found facts and no Sixth Amendment violation occurred.

Finally, although the circuit court correctly scored OV 14, that score was based on judicially determined facts. MCL 777.44 provides for a 10-point score for this variable when the defendant was the leader in a multiple offender situation. Johnson observed defendant with a second individual during the September 7 incident and the court found that multiple individuals were involved in the September 27 incident as firebombs were thrown in quick succession at both the front and back of the house. The evidence supported that defendant was the leader in both incidents as he was Johnson's ex-boyfriend and had made threats to blow up the house before the crimes. However, that multiple offenders were involved was not an element of any of the charged offenses.

Less 20 points for those variables based on judicially-found facts, defendant's total OV score is reduced to 60 and his OV Level reduced from VI to V. The reliance on judge-found facts therefore increased defendant's minimum sentencing guidelines range. This is the very type of case governed by *Lockridge* and remand for consideration of the necessity of resentencing consistent with *Crosby* is required.

## IV. SENTENCES ABOVE STATUTORY MAXIMUMS

Finally, defendant asserts that his sentences for aggravated stalking and felon in possession of a firearm are invalid because, even with consideration of his status as a habitual fourth offender, they exceed the statutory maximums. Defendant failed to preserve this challenge by raising a timely objection below or filing a motion to correct an invalid sentence under MCR 6.429(B). *People v McGuffey*, 251 Mich App 155, 165-166; 649 NW2d 801 (2002). Our review is therefore limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

"A sentence is invalid when it is beyond statutory limits. . . ." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). "Although the authority of the court over a defendant typically ends when a valid sentence is pronounced, the court may correct an invalid sentence after sentencing." *Id.* In accordance with MCR 6.429(A), "The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law."

Aggravated stalking is governed by MCL 750.411i. Subsection (3)(a) of the statute provides for a maximum sentence of "imprisonment for not more than 5 years or a fine of not more than $10,000.00, or both." The statutory maximum sentence for felon in possession of a firearm is set by MCL 750.224f(5) at "imprisonment for not more than 5 years or a fine of not more than $5,000.00, or both." Defendant was, however, sentenced as a fourth habitual offender. MCL 769.12 provides for sentencing enhancement for such offenders:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

> (b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term.

The trial court sentenced defendant to 26 to 50 years' imprisonment for his aggravated stalking and felon-in-possession convictions. Defendant had four additional felony convictions connected with the underlying offenses. In addition, defendant's presentence investigation report listed 12 prior felony and four misdemeanor convictions. As such, defendant's sentences for aggravated stalking and felon in possession comported with the governing statutes.

We affirm defendant's convictions, but remand this matter to the trial court to determine the necessity for resentencing in accordance with *Lockridge*. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro

-11-